```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

NEHMIAS MUNOZ,

             Plaintiff,

        v.                            14 Civ. 6628 (AT)

THE CITY OF NEW YORK, et al.,
                                      Telephone Conference
             Defendants.

------------------------------x
                                      New York, N.Y.
                                      December 18, 2015
                                      10:35 a.m.


Before:

        HON. DEBRA C. FREEMAN

                                      Magistrate Judge




           APPEARANCES

NEHMIAS MUNOZ
    Plaintiff pro se


ZACHARY W. CARTER
    Corporation Counsel for the City of New York
    Attorney for Defendants
ARIEL S. LICHTERMAN
    Assistant Corporation Counsel
```

1                (Case called)

2                THE COURT:  Good morning, this is Judge Freeman.  Mr.
3    Munoz, are you there?

4                MR. MUNOZ:  Yes, ma'am.  How are you doing?

5                THE COURT:  I'm doing all right.  How are you?

6                MR. MUNOZ:  I'm okay.  I was just starting to explain
7    to Mr. Lichterman that usually you send me a letter for the
8    phone conference.

9                THE COURT:  I think we had to reschedule it.

10               MR. MUNOZ:  Right now I almost got a ticket, a
11   disciplinary hearing ticket, because for some reason I looked
12   at the courthouse sheet and my housing unit and I didn't see my
13   name.  I didn't get no letter.  When I got over here, my name
14   is on the courthouse sheet.

15               I'm working now.  I got me, in order for me to stay in
16   an upstate jail, you need some type of occupation.  I'm working
17   now.  So I came in a little late.  The counsel told me next
18   time I'm late, I'm going to get a discipline hearing ticket.  I
19   can't afford to get a disciplinary hearing ticket because then
20   I'll lose my business.

21               THE COURT:  First of all, I have Mr. Lichterman, yes?

22               MR. LICHTERMAN:  Yes.

23               THE COURT:  I have a court reporter here.  Mr.
24   Lichterman, as usual, if you would be kind enough to order the
25   transcript and provide a copy to Mr. Munoz, I would really


1   appreciate that.
2           MR. LICHTERMAN:  Yes, your Honor.
3           THE COURT:  Mr. Munoz, I think what happened was we
4   had this conference scheduled for December 11.
5           MR. MUNOZ:  Yes.  I told Mr. Lichterman they had moved
6   me from housing to another housing unit.
7           THE COURT:  Whatever it was, the call wasn't ready to
8   go forward at the time that it was scheduled, and we ended up
9   having to move it because I had something else coming up on my
10  calendar.  Maybe in the process of moving it you didn't get the
11  follow-up order that arranged to have it moved.  I apologize
12  for that.
13          MR. MUNOZ:  If there is any possible way that you
14  could contact my counselor over here, if Mr. Lichterman could
15  be able to speak to her.  She told me that next time I'm late,
16  she is going to write me up, and that's a disciplinary hearing
17  I can't afford.
18          THE COURT:  Next time you're late for a conference
19  with the court?
20          MR. MUNOZ:  Yes, a conference phonecall here.  It's in
21  another building.  It's in 13 building.  They got me now
22  working in industry.
23          THE COURT:  I don't know that we are going to have
24  another conference soon.  Let's find out what's going on in the
25  case.  I had indicated that we were going to have fact

1  discovery close by the end of this month.  You still don't have
2  a lawyer coming forward, so we have to make do.  Was Mr. Munoz
3  deposed?
4          MR. LICHTERMAN:  No.  He is scheduled for his
5  deposition for next Wednesday.  I have arranged it with his
6  facility and to have a reporter up there.  That should be going
7  forward on the 23rd.
8          THE COURT:  Mr. Munoz, do you need to have your
9  counselor informed about that?
10         MR. MUNOZ:  Yes.  And I would like to know the time.
11 I'm working now.  They got me working in industry.  I'm
12 learning how to make chairs with the regular prisoners.
13         THE COURT:  What time is that scheduled for?
14         MR. LICHTERMAN:  For 10 a.m.
15         THE COURT:  10 o'clock on December 23rd, which is
16 Wednesday of next week.
17         MR. MUNOZ:  Okay.
18         THE COURT:  Do you need me to tell your counsel this
19 or do you now know?
20         MR. MUNOZ:  No, it's not really a problem.  She just
21 told me she's going to write me up next time for being late.
22 Last time I couldn't make it, I came in late like an hour and
23 change late because --
24         THE COURT:  I just want to know for the deposition
25 next week do you need us to do anything else other than tell

1  you now that it's 10 o'clock on Wednesday?

2             MR. MUNOZ:  The reason why I'm trying to say is that
3  I'm working in industry now, and it's in another building.
4  When the counselor calls my housing unit, nine out of ten they
5  also might not call on time or right away to where I'm working
6  at.  So if it's possible if I could be sent a letter like you
7  always do, you always send me a letter with the conference date
8  with the time on it, if you could send me a letter, that's like
9  black and white.  That's documentation that I can show the
10 officer where I work at, and I can be released earlier so I can
11 come here on time, so that way my counsel might not write me
12 up.

13             THE COURT:  What time do you start working?

14             MR. MUNOZ:  I start working at 8 o'clock in the
15 morning.

16             THE COURT:  To get to a deposition by 10 o'clock, what
17 time would you have to leave?

18             MR. MUNOZ:  Anywhere like 9:45, like 15 minutes
19 before.  It only takes me like three minutes to get from work
20 to here.  It's not far.

21             THE COURT:  Mr. Lichterman, can you do up a little
22 order for me to sign and maybe fax it to the facility with a
23 request that a copy be delivered to Mr. Munoz?  If we send
24 something out in the mail now, it probably is not going to get
25 him to him on time.

```
 1              MR. LICHTERMAN:  Sure, I can do that.  I have already
 2   spoken to the facility, and they have already cleared the
 3   deposition.
 4              THE COURT:  I understand.  But what Mr. Munoz is
 5   saying is that he doesn't want to be late for it.  If he has a
 6   piece of paper, he can leave his job early and get there on
 7   time.  It is probably in everybody's interest.  Maybe if
 8   something in writing can go to the facility with a request that
 9   it be passed on to him so he can be excused from work early to
10   be able to be at the deposition on time if that's necessary.
11   Maybe just a letter, something, maybe talk to the facility
12   about it, so we don't have a problem.
13              MR. MUNOZ:  A letter would be good.  I could show it
14   to my office where I'm at, or the counselor.  Ms. Fernandez is
15   my counselor.  She is my ORC counselor.  I want to be on good
16   terms with her still.  I don't want to catch a ticket,
17   disciplinary hearing.  If she could call the job where I'm at,
18   I'm at industry 3, if she could call like 15 minutes ahead
19   before the conference where I could come over, it only takes
20   three minutes, then I won't be late and I won't catch a ticket.
21              THE COURT:  Is she there right now?  Is she there with
22   you now?
23              MR. MUNOZ:  Yes.  I'm in a private room with this
24   phone.  She's at her office now, yes.
25              THE COURT:  Maybe Mr. Lichterman can send a letter and
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  maybe that will work.

2          Mr. Lichterman, it is obviously in your interest to
3  have him produced on time for the deposition.

4          MR. MUNOZ:  If he could do that after the phone
5  conference, if he could fax it, I could get it right now.  I
6  don't leave here; I can't go back to work until after the
7  count, which is 12:45.  That's the time I go back to work.
8  They did the count already, the facility count for all the
9  prisoners where they count all the prisoners.

10         THE COURT:  We will see if something can be done to
11 make sure you are there on time.

12         Let me move on to the next question.  I had issued an
13 order after our last call back at the end of October.  I said
14 if you needed more information about the identity of witnesses
15 or any other information, any other discovery to support your
16 claims, you needed to act promptly to serve certain discovery
17 requests on Mr. Lichterman.  I don't know if you did do that or
18 didn't do that, but we are getting now to the end of the
19 process, and I want to see if everything is okay.

20         MR. MUNOZ:  I wrote him a letter stating the witness
21 at the store.  Due to the fact that nobody has contacted the
22 witness -- or I don't know if they have.  I believe the
23 deadline is the 31st.  I'm thinking that's going to take a
24 while to probably get this witness and probably my time is
25 going to run out.  That's the only thing that I could get.  The

surveillance cameras are already down. Mr. Lichterman was telling me there never was no videotape or none of that. I guess that's a done issue there.

As far as the witness, I told him about the witness. I don't know his name or nothing like that. I just gave him a description. I don't know if he's still working at the grocery store. It's going to take a long time probably to find this witness. I already did what I can.

THE COURT: Let me turn to Mr. Lichterman. Did you get a request from Mr. Munoz?

MR. LICHTERMAN: I got a letter asking for the video footage, which I got from Mr. Munoz already, and then asking for the witnesses who were there in the store. I indicated that we produced to him previously the first letter with the first and last name of the one witness we believe to have been in the store at the time.

THE COURT: Is that a worker in the store or someone who --

MR. LICHTERMAN: I believe it's the owner of the store. Obviously, there are security and safety concerns for that witness. At this time we've only provided the first letter of his first and last names. Mr. Munoz has his business address. It's the address of the deli where the incident occurred.

THE COURT: Let's say Mr. Munoz might want to obtain

1  testimony from this witness. How is he supposed to do that?
2  Since he is incarcerated, you haven't given him a name? He
3  can't very well just wander over to the store and do something.
4  Can he through the court serve a subpoena on first initial and
5  last initial at a business address?

6        MR. LICHTERMAN: I see the issue. If plaintiff
7  intends to take his deposition or something of the sort, then
8  certainly we can discuss producing his name. But he hasn't yet
9  indicated his intention to get any testimony from the witness.
10 Just providing his name is something that we don't want to do
11 just for the sake of doing.

12       THE COURT: Mr. Munoz, there are two possibilities
13 here. One is for you to try to obtain some evidence now before
14 any motion for summary judgment or trial, if the case goes to
15 trial. You could write out written questions for this person
16 about what the person saw. It is possible that Mr. Lichterman
17 could provide the written questions to this witness and obtain
18 sworn answers or answers made under penalty of perjury, and
19 then you could have that evidence. If it is favorable, you can
20 use it; if it's not, at least you will know what you are up
21 again. But you can try to do that.

22       The second possibility is if the case goes forward to
23 a motion, summary judgment motion, you wouldn't have any such
24 evidence. But if the case survives and goes to trial, you
25 could subpoena the witness to appear for trial and you could

1  just put questions to the witness at trial.  The one
2  disadvantage of doing it that way is, number one, you won't
3  have an advance idea of what the witness would say.  Number
4  two, if there is a summary judgment motion where you need to
5  come forward with whatever evidence you have to oppose the
6  motion, you will not have any statement from this witness.
7          It seems to me that if you think this witness may say
8  something that could help your claim, you might want to try to
9  put some questions to him during discovery.  And since you were
10 trying to get the identity of the witness and it wasn't being
11 provided to you, and since you are incarcerated and pro se, I
12 will allow a little bit more time on the clock if you want to
13 try to write out some questions to this person.
14         You can ask questions like: are you the owner of the
15 store? were you a worker in the store? or if you weren't the
16 worker in the store, what were the names of the other people
17 who worked this? what were their shifts? was there anyone
18 there, to your knowledge, who saw what happened; if so, who was
19 it? what's the last contact information for that person so that
20 I can get testimony from that person? and what did you see?
21         You can ask questions like that.  Then, maybe we can
22 get those questions to the person to get some answers.
23         MR. MUNOZ:  So I can make questions to the witness and
24 I can also make questions to the owner of store, is that what
25 you are trying to tell me?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1     THE COURT:  If you don't have the identity of the
2  witness, it's hard to know who exactly these questions are
3  being given to to answer.
4     MR. MUNOZ:  I don't know the guy's name.
5     THE COURT:  It seems to me that maybe two steps are
6  needed.  First, you do have at least initials?  The city seems
7  to know who the person is who is the owner.  If you put
8  questions to the owner, one of the questions you could put
9  might be: who are the people on duty working in the store at
10 that time, who had what job?
11    If you know the person had certain job and was on duty
12 at a certain time -- there was a person I think whom you had
13 said was serving people and somebody else who worked there,
14 right?
15    MR. MUNOZ:  Yes.
16    THE COURT:  You could say, what was the name of the
17 person doing this or that and when was the person on duty, and
18 maybe it can help you identify witnesses.
19    MR. MUNOZ:  It sounds good.  It could be helpful for
20 me.  But then again, he could say anything.
21    THE COURT:  That's right.  Somebody could say you were
22 threatening people with a gun, in which case they don't support
23 your position, they support what the officers are saying.
24    MR. MUNOZ:  Yes.
25    THE COURT:  I don't know the truth of what happened.

1  But if you think --

2          MR. MUNOZ:  I don't understand why there wasn't a
3  camera there.

4          THE COURT:  Forget the camera for a minute.  I'm
5  talking about witnesses.  You have to decide if you think
6  people will have things to say that would support your claim
7  and you want to try to get those statements or you think people
8  would not be likely to support what you are saying and maybe
9  this is not something you want to pursue.  I can't tell you
10 that.

11         What I can do is give you another short opportunity to
12 write out some written questions to the person whose initials
13 Mr. Lichterman has given you and you can see what you can learn
14 from that person: what that person saw and whether that person
15 knows of anybody else who was present.

16         Mr. Lichterman, I would ask you to get the questions
17 to the person if it's possible, or the Court would issue a
18 subpoena and we would try to figure out a way to get it served
19 for written questions.

20         You have to decide first, Mr. Munoz, that this is
21 something you want to do.  If you think they are going to say
22 something unfavorable, you might not want to do that.  I can't
23 act as your lawyer.

24         MR. MUNOZ:  I can skip all of that.  I don't know the
25 guy's name.  This is taking too long.  I told Mr. Lichterman at

1    the last phone conference, I told him about the witness.

2              THE COURT:  Mr. Munoz, not knowing his name is not the
3    reason to skip it.  At least there is an owner whose name seems
4    to be known to the defendant and can be identified.  They just
5    don't want to disclose the name to you at this time.  But if
6    you really want to pursue this, I'll give you a chance to do
7    it.

8              If you don't want to pursue it, for whatever reason,
9    if you think that you just want to move on with the case or you
10   don't think the testimony would help you, that's fine, and
11   there is no reason to prolong the discovery period.  But I want
12   to make sure you understand that I'm giving you a chance to try
13   to obtain statements from anyone who was a witness in the
14   store.

15             MR. MUNOZ:  Okay.  I'll be able to do that.  I'll go
16   to the law library tomorrow.  I'll be able to get some help.  I
17   could find out if the clerk could help me and probably put some
18   questions.

19             THE COURT:  All right.  Put some questions together
20   for the person who is the owner whose initials you apparently
21   have and send them to Mr. Lichterman.

22             Mr. Lichterman, can you look into what you think the
23   best procedure would be to have these served on the witness:
24   whether a subpoena would be needed, whether there would be a
25   willingness of the city to accept the subpoena for this person

1  or whether that is a conflict for you, just what the best way
2  to do this would be.  I don't think Mr. Munoz should be
3  deprived of the ability to obtain evidence from a witness.  But
4  because he doesn't have counsel, we've got to try to figure out
5  how things can happen.
6         I'm also going to give another call over to the person
7  who tries to help us find pro bono lawyers and explain the
8  current situation.  I had already granted the request, but, as
9  I understand it, no one has stepped forward.  I'll give it a
10 little push and see.  Maybe, maybe, we can get some help.
11        Why don't I extend the discovery for another 30 days
12 just to allow for this.  Go ahead with that deposition on the
13 23rd.  Why don't I give another 30 days to provide a window of
14 time to try to get some further information about witnesses and
15 some statements from witnesses, if that's possible, if Mr.
16 Munoz wants to.  I'll take it to January 29.  Let's have a
17 call.  Is 10:30 an okay time?
18        MR. MUNOZ:  10:30 for January 29th?
19        THE COURT:  No, no.  For one day that week for a
20 telephone call, is 10:30 okay?
21        MR. MUNOZ:  Can I check that out?
22        THE COURT:  I have to move something around on my
23 calendar to free up.
24        MR. MUNOZ:  All right, 10:30 then.  As long as I could
25 have that documentation that I could be able to show the

1   officer over there, they could release me.
2             THE COURT:  Or I could do maybe 9:30.  Is that better?
3             MR. MUNOZ:  Yes, that's better.
4             THE COURT:  How about 9:30 on the 28th.  Does that
5   work for you, Mr. Lichterman, January 28th?
6             MR. LICHTERMAN:  Yes, that works for me.
7             MR. MUNOZ:  Let me get a pencil so I could write that
8   down.
9             THE COURT:  Sure.
10             MR. MUNOZ:  Okay, I'm back.
11             THE COURT:  January 28th, which is a Thursday, at 9:30
12   for a telephone call.  Your deposition is currently scheduled
13   for December 23, that's next Wednesday, at 10 o'clock.
14             If by any chance we can give this --
15             MR. MUNOZ:  The deposition Wednesday, what date is
16   that, the 23rd?
17             THE COURT:  Yes, December 23.  The other one is
18   January.
19             MR. MUNOZ:  Okay.  What time is that, 10:30?
20             THE COURT:  10 o'clock on December 23 and 9:30 on
21   January 28.  The January one is a phonecall.
22             Mr. Munoz, I also want to tell you that right after
23   this call I'm going to give another call over to the person who
24   tries to help us get lawyers.  If there is a possibility that a
25   lawyer might come in, that lawyer would probably want to be

able to defend your deposition, and it is possible if that happens that that deposition date might get moved.

I just want to let you know that if it gets moved, it is going to be because some lawyer comes in and says he or she wants to represent you at the deposition. I don't know that that will happen, and I'm going to assume it's not going to, but if a lawyer comes in to take someone else's deposition, that lawyer would probably want to defend yours, too.

Mr. Lichterman, be on the lookout. Should anybody contact you, there may be a reason to move it.

MR. LICHTERMAN: Got it.

MR. MUNOZ: Okay.

THE COURT: I think we are done for now.

MR. MUNOZ: One last question.

THE COURT: Sure.

MR. MUNOZ: That deposition is when Mr. Lichterman comes to the facility?

THE COURT: Right. You sit down at a table and there is a court reporter taking down testimony, and he asks you questions under oath and you tell your story.

MR. MUNOZ: Okay.

THE COURT: All right?

MR. MUNOZ: All right.

THE COURT: Thank you all.

(Adjourned)