G1s1munc

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    NEHMIAS MUNOZ,

4                    Plaintiff,

5              v.                           14-CV-6628 (AT)(DCF)

6    THE CITY OF NEW YORK, et al.,

7                    Defendants.            Telephone Conference

8    ------------------------------x
                                           New York, N.Y.
9                                          January 28, 2016
                                           9:32 a.m.
10
     Before:
11
                        HON. DEBRA C. FREEMAN,
12
                                           Magistrate Judge
13
                             APPEARANCES
14                           (Via Telephone)

15   NEHMIAS MUÑOZ
          Pro Se Plaintiff
16
     NEW YORK CITY LAW DEPARTMENT
17   OFFICE OF THE CORPORATION COUNSEL
          For Defendants
18   BY:  ARIEL S. LICHTERMAN, ESQ., ACC

19

20

21

22

23

24

25

G1s1munc

| | |
|---|---|
| 1 | (In chambers) |
| 2 | THE COURT:  Good morning.  It's Judge Freeman. |
| 3 | MR. LICHTERMAN:  Good morning, your Honor. |
| 4 | THE COURT:  Mr. Muñoz, are you there? |
| 5 | MR. MUÑOZ:  Yes.  Good morning -- |
| 6 | THE COURT:  Good morning. |
| 7 | MR. MUÑOZ:  -- Judge Freeman.  How are you? |
| 8 | THE COURT:  All right.  How are you? |
| 9 | MR. MUÑOZ:  Okay. |
| 10 | THE COURT:  Is this Mr. Lichterman? |
| 11 | MR. LICHTERMAN:  Yes.  Good morning, your Honor. |
| 12 | THE COURT:  Good morning.  I assume this is everybody |
| 13 | on the call? |
| 14 | MR. LICHTERMAN:  Yes, that's correct. |
| 15 | THE COURT:  All right.  There have been a couple of |
| 16 | lawyers, I understand, who have inquired about possibly |
| 17 | representing Mr. Muñoz for purposes of discovery, finishing |
| 18 | discovery, but then they have not ended up taking the case and |
| 19 | so I'm not sure where we are on that.  Last I heard we did not |
| 20 | have someone who was volunteering to take the case, so I think |
| 21 | we're going to have to just move forward as best we can to get |
| 22 | discovery finished. |
| 23 | Last I recall, there was the interest by Mr. Muñoz in |
| 24 | identifying witnesses at the store, and the city had identified |
| 25 | only the store's owner, I think, and had only identified him by |

G1s1munc

1    initials.  Is that correct?

2              MR. LICHTERMAN:  That is correct.

3              THE COURT:  All right.  Other than trying to obtain

4    information from any witnesses, is there any other discovery

5    that remains outstanding at this point?

6              MR. LICHTERMAN:  Yes, your Honor.  At Mr. Muñoz's

7    deposition, which I took towards the end of December, he had

8    indicated that he had received various types of mental health

9    and drug treatment both before and around the time of and after

10   the incident.  We asked for him to complete releases and for us

11   to provide those records, and we have provided him with mostly

12   completed releases that he just has to sign and notarize.  We

13   haven't received the releases yet back from him, but we would

14   like those releases as well as those records.

15             THE COURT:  Mr. Muñoz?

16             MR. MUÑOZ:  Yeah, I just got them like four days ago.

17   He sent them out I believe January 14, but I got it like four

18   days ago.  Today's the 28th, and it got here -- received

19   January 20th.  It's a whole bunch of consent forms for some

20   mental health programs.  It's like -- some of these, it's like

21   unnecessary, 'cause it's dealing like before the crime.  The

22   only one that was really after the crime was the Realization

23   program.  He also put -- he wants records from -- not only from

24   mental, from the mental health information, but he also

25   wants -- he also wants drug records, like, you know, those

G1s1munc

1   programs, they have MICA for the mentally ill and they also

2   have rehab programs.

3           THE COURT:  Well, Mr. Muñoz, I think that because a

4   central issue in this case is what your conduct was at the time

5   of your arrest and --

6           MR. MUÑOZ:  Right.

7           THE COURT:  -- whether you are both credible in

8   describing it and accurate in your ability to describe it,

9   whether you were in any way impaired at that time, I think a

10  question of whether you were having any substance abuse issues

11  at the time of the arrest or having mental health problems that

12  may or may not have been treated at the time of your arrest

13  would be relevant on this question of what happened because

14  it's my understanding there is a dispute regarding your conduct

15  on that day, so I don't think that only the records after your

16  arrest would be relevant.  I do think that there could be a

17  reasonable time limitation on the records that are obtained,

18  but I do think that some records prior in time or roughly

19  contemporaneous with that time, around that same time, would be

20  relevant.  Because let's say hypothetically if you were high at

21  the time or if you had a mental health problem for which you

22  did not take your medication at that time --

23          MR. MUÑOZ:  Right.

24          THE COURT:  -- that could impact on your conduct and

25  your credibility with respect to what happened.

G1s1munc

1           MR. MUÑOZ:  Okay.  So -- all right.  So Magistrate

2    Judge Freeman, so you're saying you want me to -- so it's

3    proper for me to do all of them?  Because --

4           THE COURT:  Well, Mr. Lichterman, what is the time

5    period you're requesting?

6           MR. LICHTERMAN:  I had asked him to complete releases

7    for five different facilities.  I asked just for their complete

8    files.  I don't have the, you know -- Mr. Muñoz couldn't recall

9    at what time or what dates he treated at these facilities.  A

10   number of them were for specifically mental health-related

11   issues and they may have diagnosed him with mental illnesses.

12   Again, at his deposition Mr. Muñoz couldn't recall, you know,

13   when he went to these facilities, what exactly the treatment he

14   received, what diagnoses he was given, so I was asking for the

15   complete files from those facilities.

16          THE COURT:  Well, with respect to substance abuse, any

17   drug treatment program, I would think that a reasonably short

18   time frame prior to the arrest would be relevant.  For mental

19   health, I could understand going back a little further just to

20   see if there was a diagnosis, because sometimes you have a

21   diagnosis and then you're just in treatment thereafter and

22   there may not be a repeat notation in the record as to what the

23   diagnosis is, so I can understand going back a little further

24   in time, but not to the beginning of time.  It seems to me

25   there should be reasonable time limitations on these.

G1s1munc

1          Mr. Muñoz, do you recall when you were in any drug

2    treatment program?

3          MR. MUÑOZ:  Actually, I was in one program when the

4    crime -- when I had committed a crime, and it's called

5    Realization.

6          THE COURT:  It's called --

7          MR. MUÑOZ:  I was there before and I was also -- I

8    went back when I got bailed out.

9          THE COURT:  Okay.

10         MR. MUÑOZ:  I went back to my program.

11         THE COURT:  Okay.  What was the name of that program

12   again?

13         MR. MUÑOZ:  It's called Realization.

14         THE COURT:  Realization, like realizing something?

15         MR. MUÑOZ:  Yeah, Realization program.

16         THE COURT:  And Mr. Lichterman, is that one of the

17   releases that you asked for?

18         MR. LICHTERMAN:  It is, your Honor.

19         THE COURT:  Mr. Lichterman, were there other drug

20   programs besides that one where you asked for a release?

21         MR. MUÑOZ:  After or before?

22         THE COURT:  I'm asking Mr. Lichterman if there were

23   any others he asked for.

24         MR. LICHTERMAN:  If I'm not mistaken, Mr. Muñoz

25   received both mental health and drug-related treatment at some

G1s1munc

1    of the facilities, so I'm not sure exactly what treatment he

2    received at the places, but I believe he did receive --

3            MR. MUÑOZ:  I got them right here, your Honor.  At

4    Project Renewal, I was treated for both, for substance abuse

5    program and also mental health.

6            THE COURT:  Can you tell me whether that was close in

7    time to your arrest.

8            MR. MUÑOZ:  That was from 2008 to 2009 and a half, you

9    could say, I had finished.

10           THE COURT:  Somewhere in 2009.  What was the date of

11   the arrest?

12           MR. MUÑOZ:  December -- I mean September 13, 2011,

13   2011.

14           THE COURT:  2011.  So you had mental healthcare at

15   that program, Renewal?

16           MR. MUÑOZ:  I was at Realization.

17           THE COURT:  No, no, no, no.  The program you just

18   mentioned.  Renewal something?

19           MR. MUÑOZ:  Oh, Project Renewal?

20           THE COURT:  Project Renewal you finished sometime in

21   2009?

22           MR. MUÑOZ:  Yes.

23           THE COURT:  What were the other ones?

24           MR. MUÑOZ:  Project Renewal and MICA program, also

25   called The Bridge.

G1s1munc

1          THE COURT:  When were you in that one?

2          MR. MUÑOZ:  That was part of Project Renewal program,

3     I had to go to The Bridge.

4          THE COURT:  So that was also up to sometime in 2009?

5          MR. MUÑOZ:  That was from 2008, same, 2009.

6          THE COURT:  Okay.  Okay.

7          MR. MUÑOZ:  And then once I finished Project Renewal

8     and The Bridge, I graduated, they put me in another mental

9     health program called Heritage Health housing, and I was there

10    from 2009 till 2010.  I probably did like maybe, the most, a

11    year and a half.

12         THE COURT:  Okay.

13         MR. MUÑOZ:  And then from there, that's when I -- I

14    went to move, I went to the shelter, 'cause I was -- I started

15    abusing drugs and started relapsing.

16         THE COURT:  So the shelter, that's just a place where

17    you were living.

18         MR. MUÑOZ:  I was in the shelter, yeah, and then from

19    the shelter, then I visited my fiancée a few times but I didn't

20    stay with her.  I went to -- I went to the outpatient program

21    called Realization.

22         THE COURT:  You went from there to Realization.

23         MR. MUÑOZ:  Yeah.  That was -- that was -- that was

24    before I committed a crime, and then once my fiancée bailed me

25    out, I went to -- back to the Realization program.

G1s1munc

| 1 | THE COURT:  Okay.  So stop for a second.  I'm going to
| 2 | ask Mr. Lichterman:  Were there any releases you sought other
| 3 | than the ones that Mr. Muñoz has already mentioned now?
| 4 | MR. LICHTERMAN:  I believe that's it.  I'm just
| 5 | checking to verify.  Realization, Project Renewal, The
| 6 | Bridge --
| 7 | THE COURT:  I'm sorry?
| 8 | MR. LICHTERMAN:  -- I believe there was one additional
| 9 | one called Create, Create Incorporated.
| 10 | THE COURT:  Mr. Muñoz, do you know what that one is?
| 11 | MR. MUÑOZ:  That's not mental health ones.  That was
| 12 | just -- it was just a inpatient program I was in when I was on
| 13 | parole.
| 14 | THE COURT:  That's drugs?
| 15 | MR. MUÑOZ:  Yeah.  It was mandated inpatient program
| 16 | that I had.  I was on parole violation and they revoked and
| 17 | restored me to that program.  They made me a free man as long
| 18 | as I'd be in that inpatient program.
| 19 | THE COURT:  So when was this?  What year or years?
| 20 | MR. MUÑOZ:  It was 2005.
| 21 | THE COURT:  Oh, it's older.
| 22 | MR. MUÑOZ:  No, that was -- yeah, I -- I think it was
| 23 | from --
| 24 | THE COURT:  It was before Project Renewal?
| 25 | MR. MUÑOZ:  2005 to 2004, something like that.  I'm

G1s1munc

1    not really sure.  I can't really remember.

2                THE COURT:  Was it before Project Renewal?

3                MR. MUÑOZ:  Yeah, it was a lot -- way before that.

4                THE COURT:  Way before.  Okay.  So it seems to me that

5    from what you've described, the Realization program records

6    would clearly be relevant, probably in their entirety, at least

7    up to some reasonable date, but because that was before,

8    during, and after the time of the arrest, that would seem to me

9    to be very relevant.

10              The Heritage House program, that would also seem to me

11   to be relevant because it's within a reasonable time prior to

12   the time of your arrest, okay?

13              As we go further back in time, Project Renewal and The

14   Bridge would seem to me to be somewhat less relevant, and

15   Create I would say we should probably skip at this time because

16   that goes back too far in time.

17              So my real question is, Project Renewal and The

18   Bridge, Mr. Lichtman, I'm wondering, if you get good solid

19   information from the Realization program and from Heritage

20   House, where there's probably going to be some indication of

21   the prior history --

22              MR. MUÑOZ:  Can I interject, your Honor?

23              THE COURT:  Sure.

24              MR. MUÑOZ:  Project Renewal was -- that's how I got

25   Heritage and Realization program, from Project Renewal.

G1s1munc

1              THE COURT:  They passed you along to another program?

2              MR. MUÑOZ:  Yes.  They the ones who connected me with

3     all that.  Project Renewal was the one that connected me with

4     Heritage House housing, The Bridge --

5              THE COURT:  Well, do you think --

6              MR. MUÑOZ:  -- and Realization.  Project Renewal was

7     like the main program for me.  Actually, I was doing good all

8     the way until -- I was doing good prior to The Bridge and

9     Realization, but once I went to Heritage House housing, that's

10    when I kind of relapsed.  That's when I messed up.  So I

11    absconded the program, I left, and I became homeless.

12             THE COURT:  Okay.  Wait, wait, wait.  Stop a second.

13    Do you think that if Mr. Lichterman or the Court saw the

14    records from Realization and Heritage House, it would have a

15    pretty full picture of your conditions at the time of the

16    arrest, or do you think we'd need to go back to the Project

17    Renewal records to get a full picture?

18             MR. MUÑOZ:  I think -- I think both the Project

19    Renewal, Heritage, and Realization.

20             THE COURT:  Okay.  So why don't you sign these three

21    then, okay?

22             MR. MUÑOZ:  Okay.  I've picked them out.  I got

23    Project Renewal here, put them on the side.  And the reason why

24    I haven't done this paperwork is because we -- it's very rarely

25    we get law library over here in Fishkill.  It's like we have to

G1s1munc

1    sign a paper and --

2          THE COURT:  Okay.

3          MR. MUÑOZ:  But I saw the officer and most likely if I

4    approach him, most likely I could get this paperwork done

5    probably tomorrow.

6          THE COURT:  So it's just a matter of signing it and

7    getting it back out the door.

8          MR. MUÑOZ:  Yes.  Project Renewal, Heritage?

9          THE COURT:  Heritage.

10          MR. MUÑOZ:  Okay.

11          THE COURT:  And Realization.

12          MR. MUÑOZ:  Okay.  Okay.  I got it.

13          THE COURT:  Do you have a separate one for The Bridge?

14          MR. MUÑOZ:  I got The Bridge too.

15          THE COURT:  That goes along with Project Renewal?

16          MR. MUÑOZ:  Yeah, it does.

17          THE COURT:  So maybe that one too then.  And then if

18    you have one for Create, for now don't bother with that one,

19    okay?

20          MR. MUÑOZ:  Okay.  All right.  So then I'll just take

21    the Create out.

22          THE COURT:  Okay.

23          MR. MUÑOZ:  That's a lot easier for me.

24          THE COURT:  Okay.  If you can sign the rest and send

25    those back to counsel.  I think you're claiming that you had

G1s1munc

1   emotional harm as a result of your arrest, right?

2         MR. MUÑOZ:  Yes.

3         THE COURT:  So, you know, that's also relevant to

4   that, if you're putting in issue in the case whether you really

5   suffered emotional harm.

6         MR. MUÑOZ:  I also have a letter that, at the time

7   when I was out on bail, my legal aid, Mr. Gurwitch, and the

8   judge, Magistrate Judge Margaret Clancy in the Bronx Supreme

9   Court, they were trying to get me into a -- like a -- sort of

10  like a mental program instead of doing time, but that didn't

11  happen.  Once my bail got revoked, Realization program wrote me

12  a letter.  I could make a copy of that letter and I could also

13  forward that.  My psychiatrist was Ms. Aponte.

14        THE COURT:  How do you spell that?

15        MR. MUÑOZ:  It's got all the actions and medications I

16  was on.

17        THE COURT:  How do you spell that, Aponte?

18        MR. MUÑOZ:  I think it's A-P-O-N-T-E.  I think her

19  first name is -- her first name is Ms. Leia (ph).  She works in

20  the Realization.  She's a psychiatrist there in the program.

21        THE COURT:  Okay.  So Mr. Lichterman, did you already

22  know that name?

23        MR. LICHTERMAN:  I'm not sure who that is, but it

24  sounds like Mr. Muñoz has those documents.  We've requested

25  whatever documents he had in his possession and he has not

G1s1munc

```
 1   provided these things, so we would ask that he provide those as
 2   well.
 3              THE COURT:  Well --
 4              MR. MUÑOZ:  I mean, I could send the letter.  The
 5   problem is that this copy machine, not all the time you can get
 6   copies, so --
 7              THE COURT:  What is this letter, exactly?  Basically,
 8   what does it say?
 9              MR. MUÑOZ:  It was a letter -- excuse me.  It was a
10   letter from my Legal Aid, Mr. Gurwitch, so he could present it
11   during court, 'cause they were -- Mr. Gurwitch was trying to
12   get me --
13              THE COURT:  A program.
14              MR. MUÑOZ:  -- a program, mental health program,
15   instead of doing time.
16              THE COURT:  So the letter attached a report from a
17   psychiatrist?
18              MR. MUÑOZ:  Yeah.  It's a letter from the whole team
19   from Realization, the psychiatrists --
20              THE COURT:  They talked about what your --
21              MR. MUÑOZ:  -- my case manager --
22              THE COURT:  And it talked about what your condition
23   was?
24              MR. MUÑOZ:  Yeah.  It's got all the actions and
25   medications that I was taking at the time.
```

G1s1munc

1          THE COURT:  Okay.  So if you could manage to get a

2     copy of that sent to Mr. Lichterman, that would also be

3     excellent.

4          MR. MUÑOZ:  I mean, if I can't get a copy, is it all

5     right with the information of his -- I can forward him, as long

6     as he can make a copy and send it back, and I believe he

7     could -- I believe he's responsible, he will send -- forward it

8     back to me, 'cause there's a problem here with this copy

9     machine.  I'm gonna try my best though.

10          THE COURT:  Mr. Lichterman, if you get an original, if

11     you could please make a copy and return the original to

12     Mr. Muñoz.

13          MR. LICHTERMAN:  Yes, that's fine, your Honor.

14          MR. MUÑOZ:  Okay.  That shouldn't be no problem then.

15     Then what I could do is, I saw the officer for the law library,

16     he's all right with me.  He understands my situation.  And I

17     put an assist for this weekend, but by any chance -- I'm not

18     sure it's on time to put my name on the callout for the

19     library, but I believe I could speak to them and probably get

20     down here tomorrow, so I could do that tomorrow, 'cause

21     tomorrow they do -- the notary is Mondays, Wednesdays, and

22     Fridays, they do the notary here.  This paperwork also has to

23     be notarized.

24          THE COURT:  Okay.  All right.  That would be fine.

25          MR. MUÑOZ:  So by any chance, if it can't happen

G1s1munc

1    tomorrow, then we have Monday, 'cause it's Monday, Wednesdays,

2    and Fridays is the notary.

3            Now there's one more thing, Mr. Lichterman and

4    Magistrate Judge Freeman.  He sent me some copy of the

5    transcripts of December 23rd, right?  He wants me –– once I

6    have everything notarized, he wants I guess the original to be

7    notarized I guess or signed or ––

8            THE COURT:  Are you talking about the deposition

9    transcript, when you were deposed?

10           MR. MUÑOZ:  From December 23rd, yeah.

11           MR. LICHTERMAN:  Yes.

12           THE COURT:  So what you should do ––

13           MR. MUÑOZ:  Huh?  On the last page it says signature,

14   witness and date, right?  He wants me to send this whole thing.

15   I don't have no money to send this whole book.  I mean, I could

16   be able to send it like a little at a time.

17           THE COURT:  Okay.  Wait, wait, wait, wait.  Mr. Muñoz,

18   first of all, you should read the transcript and see if it

19   looks correct to you, okay?

20           MR. MUÑOZ:  Okay.  Okay.

21           THE COURT:  If you think that the court reporter made

22   a mistake in writing down your answers, then you should on a

23   piece of paper ––

24           MR. MUÑOZ:  The page number, right?

25           THE COURT:  Yeah.  On a piece of paper you should

G1s1munc

indicate the page number and the line number, because the lines
will all be numbered also on each page.

          MR. MUÑOZ:  Okay, okay.

          THE COURT:  You should indicate what the mistake is,
okay?

          MR. MUÑOZ:  Okay.

          THE COURT:  And then you should indicate that you've
read everything else and these are the only things you see as
mistakes.  And maybe there won't be any mistakes.  You should
indicate you read it and it appears accurate to you otherwise,
and then you should sign that and date it, that piece of paper,
okay?  And then if you can't -- the last page of the transcript
should give you a place to do that, but if you don't see a page
where you can do that, you can do it on a separate piece of
paper.  And then the important thing is to send that piece of
paper back to Mr. Lichterman because what he really cares
about -- forgive me, Mr. Lichterman for speaking for you,
but -- what he really cares about is that you've had an
opportunity to review it and you confirm that it's accurate in
terms of your testimony, and you've had a chance to read it and
you sign it and you indicate that you read it.  It's not as
important that he receive the entire thing back.  If you can
send the entire thing back with a signature at the end, that's
great, but if you can't, at least a piece of paper that
indicates right on it that you've reviewed the December 23rd

G1s1munc

transcript of your deposition and it's accurate and then you

sign it.  Now when I'm telling you take a look for mistakes, I

don't mean you change a yes to a no or you do something that's

totally different, but if there's a typo or there's something

where the court reporter didn't quite catch what you were

saying --

           MR. MUÑOZ:  Something I probably didn't say, right?

           THE COURT:  You can't change your testimony but you

can correct it.  So for example, if it said September 2012 and

you say, oh, no, no, no, that's a mistake, it was 2011, you

should indicate that, or if there's a typo or someone didn't

quite understand what you said, it came out jumbled, you can

make it clear.  And the whole idea is that you've had a chance

to look at it and you confirm that it is correct, okay?

           MR. MUÑOZ:  Okay, all right.

           THE COURT:  It's not an opportunity to completely

change what you said, all right?  It's just --

           MR. MUÑOZ:  Okay.  So I could be able to do that over

this weekend, like Saturday.  We have -- I mean, I'm going to

ask the officer if he could let me come down, and it's a

whole -- like a morning, and I could be able to do that with

help from one of the law library clerks down there to help me.

           THE COURT:  Okay.

           MR. MUÑOZ:  And also, it's compatible, so we get five

free legal mail letters, so I believe all these consent papers

G1s1munc

for the programs I was in, I believe that will be maybe three

letters, so it leaves me down to two, so I could probably just

send him, you know, some pages, from 1 to maybe 16, and then

the next week I could send him, you know --

THE COURT:  No.  That's okay.  Save your mail, okay?

Do it this way instead.  The letter that you have from the

lawyer that attached the psychiatric report, okay, that you

were talking about before, that's more important than sending

him pages 1 through 15 of the transcript.  So if you have an

envelope where you can fit a couple of things, put that letter

and the last page of the transcript with your signature and

don't worry.  If you're running out of legal mail, don't worry

about the rest, the whole transcript, okay?  Leave that for

last.  It's the least important thing to return, okay?

MR. MUÑOZ:  Okay.

THE COURT:  Okay.  Mr. Lichterman, you're on board

with this approach?

MR. LICHTERMAN:  Yes, that's fine, your Honor.

THE COURT:  Okay.  Now I also have on my list of

things that need dealing with witnesses in the store.  Is there

anything else besides that?

MR. MUÑOZ:  Well, I don't know the guy's name.  It's

kind of hard to track him down.  It might take too long and

then I don't want to delay my case looking for this guy.

THE COURT:  Well, we do know who the owner of the

G1s1munc

store was.  The city has that.  And they're just disclosing his

initials, but they know who that person is.

          Mr. Lichterman, have you been in touch with that

person?

          MR. LICHTERMAN:  I've briefly been in touch with him,

yes.

          THE COURT:  Do you think he might be willing to answer

some questions in writing?

          MR. LICHTERMAN:  I mean, I know that he is concerned

for his safety, but he may be willing to.  You know, I know

that, your Honor, you had given plaintiff an opportunity to

submit some questions.  I haven't received any questions from

him.

          THE COURT:  Right.

          MR. LICHTERMAN:  If he sends me questions, I'll

forward them to the store owner and we'll see if he'll be

willing to respond.

          THE COURT:  Right.  He could do it under penalty of

perjury so he wouldn't need to have it separately notarized.

But I'm wondering, Mr. Muñoz, do you want to pose questions to

the store owner?

          MR. MUÑOZ:  Yeah.  I'm going to have to get my

thoughts together, yeah.

          THE COURT:  All right.  Well, get your thoughts

together, okay?  If you have some questions about what he saw

G1s1munc

that day, write out your questions, okay?  If they aren't too

complicated and there aren't too many, he might be willing to

answer them, even without a subpoena.  If he's not willing, at

that point, Mr. Lichterman, I'll ask that you forward a copy of

the questions to me, I'll take a look.  If they look reasonable

and appropriate, we'll try to figure out how we can arrange to

have a subpoena served.  It may be difficult because although

someone is proceeding *in forma pauperis*, the marshals will

serve an initial complaint.  They don't generally serve

subpoenas.  But we'll take it as it comes.  If he would agree

voluntarily, that would be great.  And if you could talk to him

and explain that if he signs it under penalty of perjury, it

would not have to be separately notarized, that might make it

easier.  So Mr. Muñoz, if you want to pose questions to the

store owner, at least we've identified that person, right?

Write those questions out.

            MR. MUÑOZ:  I don't have the person's name.

            THE COURT:  You don't need the person's name.  Just

send a letter to Mr. Lichterman, say these are questions for

the store owner, okay?  And then Mr. Lichterman knows who this

person is.  He will make a good-faith attempt to reach out to

him and see if he will answer them, and then you'll report back

to me next time as to whether he did, whether he agreed or not,

whether there was a problem or not, and I'll take it one step

at a time.  I had extended discovery to, what, the end of this

G1s1munc

```
 1    month, right?

 2                MR. LICHTERMAN:  That's correct.

 3                THE COURT:  So to deal with these remaining things,

 4    I'll kick it out a little bit more, but then it's going to come

 5    to an end.  So if you decide to ask questions, write them out

 6    and send them; otherwise, your time is going to run out, okay,

 7    Mr. Muñoz?

 8                MR. MUÑOZ:  Okay.  I could do that.  I could do all of

 9    this by the weekend, Saturday.

10                THE COURT:  Okay.  So one of those envelopes you

11    have -- again, that's more important than the transcript, okay?

12                MR. MUÑOZ:  So that's going to be -- that will be for

13    the consent forms of the MICA programs, the rehab programs.

14                THE COURT:  Right.  Here's what you have to send to

15    Mr. Lichterman.  Here's your list: the release form that we

16    talked about except for Create, right?

17                MR. MUÑOZ:  Okay.  Except for Create.

18                THE COURT:  Except for Create.  The letter that your

19    lawyer sent that attached the report from Project Renewal.

20                MR. MUÑOZ:  That was for Realization.

21                THE COURT:  Okay.  That's no. 2.  No. 3, a signature

22    page for the transcript that just indicates if you have

23    corrections and that otherwise indicates that you've read it

24    and it looks accurate to you, with your signature and date.

25                MR. MUÑOZ:  Signature page of transcript.  Okay.  I
```

G1s1munc

1       got it.

2                   THE COURT:  And with your name and your signature and

3       the date on it, okay, indicating you've read it.  And then

4       finally, if you have questions for the store owner, send

5       Mr. Lichterman, these are my questions for the store owner,

6       okay?  Those are the things you need to try to find envelopes

7       to mail, okay?

8                   MR. MUÑOZ:  Okay.  I have that already, before.  Got

9       it.

10                  THE COURT:  All right.  Let me just grab my calendar.

11      One second.

12                  Okay.  I'm going to move this date one more month.

13      We'll move it to February 29 to get everything done.  If a

14      lawyer shows up on the scene and wants to take the case, I'll

15      listen to what that lawyer has to say.  Otherwise, your

16      discovery is going to be done February 29.  I'll schedule one

17      more call to talk to you just around that time and then we'll

18      figure out where the case goes next, okay?

19                  MR. MUÑOZ:  Could you tell Mr. Lichterman when will be

20      the next phone call so that way it could be done at -- like the

21      way they did it for today, they sent me a mandatory legal call

22      callout paper.  It was mailed to me.  And that's a better way

23      of me getting it done here on time and I don't have to get in

24      trouble with my ORC counselor here.

25                  THE COURT:  Okay.  Perfect.  So Mr. Lichterman,

G1s1munc

1     whatever you did worked, okay?

2              How about February 29 at 10:00?

3              MR. MUÑOZ:  February 29th at 10:00.

4              THE COURT:  Mr. Lichterman, does that work for you?

5              MR. LICHTERMAN:  Yes, that's good for me, your Honor.

6              THE COURT:  It's a Monday.  Is that all right,

7     Mr. Muñoz?

8              MR. MUÑOZ:  That's okay.

9              THE COURT:  All right.  We'll put it there, and

10    discovery should be done by that point, so make sure

11    whatever --

12             MR. MUÑOZ:  I need it for February 29th, but I'll

13    have it no problem.

14             THE COURT:  Well, you need to do it sooner so that you

15    can try to get answers back, whatever, but as soon as you can.

16             MR. MUÑOZ:  I'll be able to do it from tomorrow all

17    the way to Monday.  That's no problem.

18             THE COURT:  Perfect.  Okay.  All those things on your

19    checklist, and we'll do a little order of this that summarizes

20    things.  It may take a while for you to get that though.  But

21    when you get it, get my order, go down and make sure you've

22    done all the things that are on there, okay?  If you've already

23    done all of the things that are on there, that's great.  If

24    not, it's your reminder for what still has to happen, okay?

25             MR. MUÑOZ:  Okay.  So what I could do also, is this

G1s1munc

```
 1    possible, if Mr. Lichterman could send me a letter saying that

 2    the ending of disposition -- discovery would be February 29th?

 3    If I could get a letter stating that, then I would have access

 4    to this law library here.

 5            THE COURT:  I'll put it in an order and we'll send

 6    that to you.

 7            MR. MUÑOZ:  Yeah.  Then I could have access to law

 8    library and I could be able to do some research and do the

 9    whole -- that I have to do.

10            THE COURT:  I'll get an order out to you soon, okay,

11    that will say that.  And read what I send you to make sure that

12    you've got everything under control, okay?

13            MR. MUÑOZ:  I got number one release for the consent

14    programs of the mental health and MICA, rehab programs, except

15    for Project Create.  And no. 2, a letter of the Realization

16    program that I have.  3, signature page of the transcript, my

17    name and signature and the date.

18            THE COURT:  And any corrections.

19            MR. MUÑOZ:  And 4 is pose questions for the store

20    owner.

21            THE COURT:  Right.  On that signature page for the

22    transcript, any corrections.

23            MR. MUÑOZ:  Okay.  And any corrections.  Okay.

24            THE COURT:  And indicate if there are no corrections

25    or, if there are no more corrections, say that, okay?
```

G1s1munc

1          MR. MUÑOZ:  Okay.  If no -- if corrections needed,

2    right?

3          THE COURT:  Okay.  All right.  That's perfect.  And

4    Mr. Lichterman, as always, if you could order a copy of the

5    transcript of this.  I have not been getting transcripts.

6    Actually, I'm not sure.  They may be on the docket.  I usually

7    get a courtesy copy when it's on the docket but not always.

8          MR. LICHTERMAN:  I've been sending them.

9          THE COURT:  Okay.  Very good.  Thank you very much.

10   Thank you both.

11         MR. LICHTERMAN:  Thank you, your Honor.

12         MR. MUÑOZ:  You have a nice day and afternoon,

13   Magistrate Judge Freeman.  Thank you.

14         THE COURT:  You too.  Take care.  Bye-bye.

15         MR. LICHTERMAN:  Bye.

16         MR. MUÑOZ:  Bye-bye.

17                              o0o

18

19

20

21

22

23

24

25