H3fSmunC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   NEHMIAS MUNOZ,

4                   Plaintiff,

5           v.                              14 Civ. 6628 (DLC)

6   POLICE OFFICER ROBERT REID, POLICE OFFICER STEPHEN JONES,
    SERGEANT BRIAN FLYNN, and SERGEANT JAMES KELLY,
7
                    Defendants.
8
    ------------------------------x
9                                           New York, N.Y.
                                            March 15, 2017
10                                          3:30 p.m.

11  Before:

12                      HON. DENISE COTE,

13                                          District Judge

14                      APPEARANCES

15  NEHMIAS MUNOZ
         Pro Se Plaintiff
16
    NEW YORK CITY LAW DEPARTMENT
17       Attorneys for Defendants
    BY:  ARIEL S. LICHTERMAN
18       CAROLYN K. DEPOIAN

19

20

21

22

23

24

25

H3fSmunC

1           (Case called)

2           THE DEPUTY CLERK:  Is the plaintiff ready?

3           MR. MUNOZ:  Yeah, but I don't have a lawyer.

4           THE DEPUTY CLERK:  Is the defense ready?

5           MR. LICHTERMAN:  Ariel Lichterman from the New York

6  City Law Department for the defendants, Robert Reid, Stephen

7  Jones, James Kelly, and Brian Flynn, your Honor.

8           THE COURT:  I'm sorry.  Can you give me your name

9  again?

10           MR. LICHTERMAN:  Ariel Lichterman.

11           THE COURT:  Thank you.

12           MS. DEPOIAN:  Good afternoon, your Honor.  This is

13  Carolyn Depoian, also from the Law Department for the same

14  defendants.

15           THE COURT:  Thank you so much.

16           Mr. Muñoz, we are going to give you a pad and a pen

17  for you to use during this conference if you would like to.

18           MR. MUNOZ:  OK.

19           THE COURT:  This is our final pretrial conference

20  before our trial which begins on Monday.  I want to discuss

21  with you and defense counsel the issues that I think are

22  important to address in advance of that trial, to describe

23  certain of the process that we can expect to happen during the

24  trial, and to make sure that you and defense counsel have a

25  chance to ask me any questions that you have that would assist

H3fSmunC

1    you in preparing for trial.

2            Let me begin, Mr. Muñoz, by addressing that very first

3    point you raised about the fact that you don't have a lawyer.

4    I know that I was not the original judge assigned to this case.

5    Judge Torres was your original judge.  This case has been

6    reassigned to me for trial.  Judge Torres made several efforts

7    to obtain a lawyer for you.  Of course you had a lawyer, as I

8    understand it, early on in the case, but that lawyer withdrew

9    after the mediation process failed to result in a settlement

10   among the parties.  That's not uncommon.  That happens

11   frequently.

12           Judge Torres didn't stop there, though.  She made

13   several more efforts and indeed, since this case was

14   transferred to me, we have made efforts to find an attorney for

15   you through the work of our pro se office.  I want to make sure

16   you understand how this process works.  In a criminal case,

17   someone charged with an offense has a right to have counsel

18   appointed to represent them.  That's a constitutional right.

19   This case is not a criminal case, it is a civil case.  So when

20   a judge asks for an attorney for a party in a civil case, they

21   can't order an attorney to appear.  They don't even have funds

22   to pay a lawyer.  They are just asking a lawyer to volunteer

23   their services.

24           We reached out a number of times.  Our pro se office

25   has been in touch with several lawyers.  They have looked at

H3fSmunC

```
 1    the case.  They have not agreed to take the case.  This case is
 2    a case you filed in 2014, and that's a few years ago now, and I
 3    have time to try this case next week.  That would be your trial
 4    date.  I am prepared to proceed with the trial next Monday, but
 5    if you want to proceed to trial, you would be representing
 6    yourself.
 7              Do you understand what I have said to you?
 8              Yes, you have a question for me.  Please ask it.
 9              MR. MUNOZ:  OK.  I understand.  Can I at least get a
10    stand-in counsel available during this procedure of trial?
11    Because I have no whatsoever no legal knowledge whatsoever, so
12    it's like, you know, I won't really understand everything that
13    would be going on.  It's like coming in here blindfolded.
14              THE COURT:  There isn't any authority under the law
15    for me to require an attorney to be available to assist you
16    during the trial as standby counsel.  I know in criminal cases
17    there is, even when a criminal defendant wishes to represent
18    himself at trial, a standby attorney being available to consult
19    with them.
20              But let me inquire this week to see if there is some
21    attorney who would be available to just be by your side for you
22    to consult with, but I am not confident we'll be able to find
23    someone.  We will make some effort in that regard.
24              Is that agreeable to you?
25              MR. MUNOZ:  Yes, ma'am.
```

H3fSmunC

1          THE COURT:  Good.  We are going to go slowly here.  I

2    fully appreciate that you are not a lawyer.

3          Let me ask you, have you ever represented yourself in

4    a trial before?

5          MR. MUNOZ:  Never.

6          THE COURT:  I am just going to do my best to explain

7    things to you every step of the way.  If you have questions, I

8    want you to feel free to ask me questions.  OK?

9          MR. MUNOZ:  OK, ma'am.

10         THE COURT:  Good.  I am going to start by describing

11   to the parties what I understand the evidence at trial is going

12   to be, that is, what witnesses will be called, what documents

13   will be received into evidence, what the exact issues that are

14   being tried are, that is, what the jury is going to decide.

15         My understanding is as follows that you, Mr. Muñoz,

16   were arrested on September 13, 2011, and that you contend that

17   after handcuffs were placed on you at the time of that arrest,

18   the officers used excessive force against you.  That's my

19   understanding of your claim.

20         Is that your claim?

21         MR. MUNOZ:  Yes, ma'am.

22         THE COURT:  Obviously under the Constitution, you have

23   a right that you can complain about any police brutality, any

24   use of excessive force.  There's a legal definition for

25   excessive force.  I'll be giving that legal definition to the

H3fSmunC

```
 1    jury for them to make a decision.  But in terms of the factual

 2    focus, the issue is did the police officers use excessive force

 3    against you on September 13, 2011, after handcuffs had been

 4    placed on you.  It's not just did one of the officers use

 5    excessive force against you, but was any officer who was

 6    present and saw another officer using excessive force, did they

 7    fail to intervene to stop the other officer from using

 8    excessive force against you.

 9            Do you understand what I've said so far?

10            MR. MUNOZ:  Yes, I understand.  It was actually like

11    three of them.

12            THE COURT:  Good.

13            MR. MUNOZ:  It wasn't just one officer hitting on me.

14            THE COURT:  Even if an individual officer you've named

15    as a defendant here didn't actually strike you, if they had the

16    ability to stop one of their fellow officers from striking you

17    in a way that would amount to excessive force, they can be

18    found liable as well, and that theory is called failure to

19    intervene.

20            Let's make sure we agree who the defendants are here.

21    As I understand it, there are four defendants:  Police Officer

22    Reid, Police Officer Jones, Sergeant Flynn, and Sergeant Kelly.

23    There is one claim that will be tried, that is the excessive

24    force claim, and with it, the failure to intervene claim

25    against these four defendants.
```

H3fSmunC

1          The injuries that you contend occurred or were

2     inflicted on you after you were handcuffed because the officers

3     used excessive force, as I understand, are the following:

4     There was a laceration to your left eye, a laceration to your

5     right forearm, and a broken rib.  I'm not sure if it is one rib

6     or two ribs.  Do you remember, Mr. Muñoz?

7          MR. MUNOZ:  It's two fractured ribs.

8          THE COURT:  Two ribs.  Thank you.

9          It's my understanding that you seek damages from these

10    four defendants because of those three injuries, is that right?

11         MR. MUNOZ:  That's kind of correct, but I'm going to

12    say that Sergeant Kelly, he wasn't the one who was involved in

13    the excessive force.  He was, I believe, just a sergeant at the

14    time.

15         THE COURT:  Was he present?

16         MR. MUNOZ:  He came in afterwards, really, like when I

17    was already seated on the sidewalk.  I was never seated on the

18    bench as they said it was.  They said that they sat me on a

19    bench.  There was never no bench.  They sat me on the sidewalk

20    out on the street.  So Sergeant Kelly had no participation of

21    the excessive force.

22         THE COURT:  That's helpful.  I just want to make sure,

23    because I'm making a decision right now of whether the Sergeant

24    Kelly will have to be a defendant at trial or not.  I want to

25    make sure we address this carefully.  If he was present when

H3fSmunC

1    someone else was beating you or using excessive force against

2    you, he could be liable for failing to stop that.  Do you

3    understand that?

4              MR. MUNOZ:  I understand, but I was being beaten so

5    hard, I couldn't really acknowledge who was hitting me.  I

6    believe that Sergeant Kelly didn't participate in the excessive

7    force.  I believe it was just all three -- all of the other

8    officers.

9              THE COURT:  You believe that Sergeant Kelly came to

10   the scene afterwards?

11             MR. MUNOZ:  Yeah, I guess, being the fact that he was

12   the sergeant and they were just police officers.  You know, he

13   was just doing his job as a sergeant and checking on them and

14   seeing if they were all right.

15             THE COURT:  I want to, again, go slowly here because

16   this makes a difference to you and your rights.  I am

17   understanding that you want to go to trial to get damages

18   against Police Officer Reid, Police Officer Jones, and Sergeant

19   Flynn.  Am I correct?

20             MR. MUNOZ:  Yeah.  Sergeant Flynn wasn't a sergeant at

21   the time, he was a police officer.  Actually, all three of

22   them, I believe, I'm not sure if it was the Wade or the

23   Sandoval hearing, one of those hearings I have the minutes,

24   I've got to get my paperwork, because they surprisingly

25   snatched me out of my occupation job in Fishkill.  I am like

H3fSmunC

1    here surprisingly.  I never knew I was going to arrive here

2    actually Monday.  So most of my paperwork I left, but I have

3    some of it.  I have to find out that they all gave three

4    different testimonies.  So in that hearing --

5              THE COURT:  Well, before we end today's conference, we

6    are going to go through a list of papers that you would like

7    copies from defense counsel to make sure you're well prepared

8    for this trial.

9              As I understand it, Mr. Muñoz, you agree that Sergeant

10   Kelly can be dismissed from this case since he was not someone

11   who used excessive force against you and was not on the scene

12   when excessive force was being used against you; is that right?

13             MR. MUNOZ:  That's correct, ma'am.

14             THE COURT:  So the trial will be against three

15   defendants, not four.  As I understand it, the plaintiff had

16   hoped, at one point at least, that one or two employees who

17   were at the store where he was arrested could be identified and

18   perhaps participate in this case as witnesses.  I've reviewed

19   the history of the discovery process, including several of the

20   transcripts of conferences that were held by the magistrate

21   judge who was supervising discovery, Magistrate Judge Freeman

22   in particular.  Let me see if I can give you the dates of the

23   transcripts that I read that were very helpful to me.

24             I read in particular the transcript of December 18,

25   2015, and January 28, 2016.  I've also looked at the letter

H3fSmunC

1   that the City wrote to Judge Torres on July 18, 2016.  This

2   describes the efforts that were made to try to locate a store

3   employee who may have been present in the store on

4   September 13, 2011.

5           I could give detailed findings with respect to what

6   happened procedurally in this case, and I'm prepared to do that

7   if that would be helpful to anyone, but the bottom line, as I

8   understand it, is that no employee in the store has ever been

9   identified as someone who was present on September 13, 2011,

10  except for someone who is no longer in the country and who no

11  longer owns the store.

12          Is that your understanding, Mr. Muñoz, as well?

13          MR. MUNOZ:  Actually, he's supposed to be the owner of

14  the store.  He was never inside of the store that day.  He just

15  happened to cooperate with the officers with going by the story

16  that they were saying to him.

17          There was two witnesses.  There was a Mexican guy and

18  there was a Dominican guy.  And for some reason, I didn't know

19  their names, because I am not really too familiar with -- I'm

20  not too familiar with them.  I do shop in that store, so I know

21  the store very well.

22          The store owner, I guess when I shot him the nine

23  questions, because Magistrate Freeman was trying to lead the

24  counselor over here, Mr. Lichterman, to locate him so they can

25  bring him in to question him, so I could be able to question

H3fSmunC

1    him, but he never showed up.  I guess he sold the business and

2    he flew to his country or whatever, and those questions were

3    never answered.  One of the questions that I had shot to him in

4    the nine questions was:  What happened to the tape recordings,

5    the video recordings of the civilians of the store?  Because

6    that store has civilian cameras on it.  He never answered it.

7    I guess that video was, say, gone.  That was one of the

8    questions I asked him.  He was never present at the store, I

9    know that for a fact.

10             THE COURT:  Despite the lengthy period of discovery,

11   fact discovery, and it ran for about nine months.  It may have

12   run longer.  It was first supposed to end in October, then it

13   was extended to December, and then January, and ultimately the

14   end of February.  The witnesses were not identified.  Efforts

15   were made, so they're not going to be witnesses at the trial.

16   They are unknown to us.

17             The next potential group of witnesses are medical

18   witnesses and I think, if I understand correctly reading all

19   these papers, what is really critical here is that certain

20   medical records be received into evidence to reflect the

21   injuries that you sustained on September 13, 2011, which are

22   important, Mr. Muñoz, to the claim for damages that you're

23   making.

24             In the normal course, and this is true in lots of

25   trials, the parties just agree to have the documents received

H3fSmunC

1    into evidence, and then the documents are provided to the jury

2    and the parties are able to make their arguments based on what

3    the documents say.  I am going to assume, and we are going to

4    turn to this for a minute, there are going to be no medical

5    witnesses, but that medical records will be received into

6    evidence and that we will discuss with each other precisely

7    which portions of the medical records will be received into

8    evidence.

9             Is that agreeable, Mr. Muñoz?

10            MR. MUNOZ:  That's OK with me, ma'am.

11            THE COURT:  Good.

12            Is that agreeable, Mr. Lichterman?

13            MR. LICHTERMAN:  Yes, your Honor.

14            THE COURT:  Let's turn specifically to the medical

15   records.  Have defense counsel brought what they believe are

16   the relevant medical records to court today?

17            MR. LICHTERMAN:  Yes, your Honor.  We actually brought

18   all of the medical records in case you wanted to look at them.

19   Particularly what we think are the records at issue are the

20   ones directly related to the injuries that Mr. Muñoz is

21   claiming in the case that took place right after the incident.

22            THE COURT:  Have you identified what passages from

23   those medical records you believe are relevant to the

24   plaintiff's claims, again, the two lacerations and the two

25   broken ribs?

H3fSmunC

1          MR. LICHTERMAN:  We can identify those pages.

2     Offhand, I don't have the specific page references.  I can list

3     a page range in which those injuries are discussed.

4          THE COURT:  Have you looked at and have you marked up

5     a copy of those specific pages?

6          MR. LICHTERMAN:  We have not marked up a copy.

7          THE COURT:  On any page of the document, there may be

8     material that is relevant and material that is irrelevant.  For

9     instance, somebody's Social Security number is not relevant.

10          Can I ask you, Mr. Lichterman, to identify those pages

11     and passages from the medical records that you believe are

12     relevant to the plaintiff's claim of injury here and including

13     what he was treated for and complained of on the date of his

14     arrest and treatment records reflecting treatment for those

15     injuries over time.  For instance, if there are broken ribs,

16     they may have been treated over a matter of weeks or months, I

17     have no idea, but any records that reflect that treatment for

18     those injuries as well.

19          Can you do that for me?

20          MR. LICHTERMAN:  Yes, your Honor.

21          THE COURT:  Can you provide a set of those records to

22     the plaintiff by tomorrow?

23          MR. LICHTERMAN:  Yes, your Honor.

24          THE COURT:  Mr. Muñoz, what you're going to get

25     delivered to you tomorrow is the passages from the medical

H3fSmunC

1    records, your medical records, that the defendants believe are

2    relevant to the two lacerations and the two broken ribs.  Then

3    if you agree that all of that is relevant, then we'll just have

4    a stipulation, and those records will come into evidence at

5    trial and the jury will be able to see them.

6           If you believe they're incomplete in any way -- and

7    perhaps it would be helpful, actually, for there to be a

8    discussion after this conference is over between defense

9    counsel and you, Mr. Muñoz, to make sure that you're on the

10   same wavelength as to what is relevant -- I want you to feel

11   free to tell Mr. Lichterman, and we'll work out any dispute

12   that might exist with respect to that.

13          Is that agreeable?

14          MR. MUNOZ:  That's agreeable, ma'am.

15          THE COURT:  Good.  The witnesses at trial are going to

16   be the plaintiff and the three defendants, Reid, Jones and

17   Flynn.

18          Let's go to the issue --

19          MR. LICHTERMAN:  Your Honor, if I may briefly?

20          Defense counsel would like to call Sergeant Kelly as a

21   witness.  We believe he has got some relevant information, even

22   though he is now not a defendant going forward.

23          THE COURT:  Mr. Lichterman, is it the defense position

24   that he was present on the scene at the time the plaintiff was

25   handcuffed?

H3fSmunC

1          MR. LICHTERMAN:  Yes, your Honor.

2          THE COURT:  I am not cutting him out then of this

3     case.  He will remain a defendant.

4          MR. LICHTERMAN:  Yes, your Honor.

5          THE COURT:  We are going to have a four-defendant

6     case.

7          MR. LICHTERMAN:  Yes, your Honor.

8          THE COURT:  Let's turn to the exhibit list.  We have a

9     list of the plaintiff's exhibits being a photograph of the

10    plaintiff taken after the incident.  There is an objection by

11    the defendants as to relevance and authenticity.  I don't

12    understand that objection.

13         MR. LICHTERMAN:  Your Honor, if the photos are the

14    same photographs that we included on our exhibit list, we don't

15    have an objection to them.  However, we're not clear exactly

16    how plaintiff intends to use them, which was those were the two

17    basic reasons for the objection.

18         THE COURT:  Do you have copies of the photographs with

19    you?

20         MR. LICHTERMAN:  Yes, your Honor.

21         THE COURT:  After this conference, show the plaintiff

22    the photographs, see if he thinks there are any other

23    photographs that he wants to introduce.  Try to work it out

24    with him.  But I don't want objections that make no sense.  I

25    think we worked through the medical records.  The parties are

H3fSmunC

1    in agreement that they are admissible.

2              Mr. Muñoz, I understand from the defendants' pretrial

3    statement that you want to offer an NYPD internal investigation

4    report.  That report is not generally admissible.  You have to

5    have a witness who testifies to something they saw, heard, felt

6    or said.  Some investigator's report about what they found in

7    investigation is not generally admissible at trial.  Do you

8    understand that?

9              MR. MUNOZ:  You're talking to me, ma'am?

10              THE COURT:  Yes, I am, Mr. Muñoz.

11              MR. MUNOZ:  Those are the reporters that came in

12    supposedly and never had no type of audio.  Is that what you're

13    referring to?

14              THE COURT:  This wasn't in your pretrial statement.

15    Let me ask defense counsel.  On page three of the defendants'

16    pretrial statement, you have a list of plaintiff's exhibits.

17    Where did you get that from?

18              MR. LICHTERMAN:  That was from plaintiff's pretrial

19    statement.  On page two of the plaintiff's pretrial statement,

20    under the first subheading, item number three lists NYPD

21    internal investigation reports.

22              THE COURT:  Thank you.  That is very helpful.

23              Mr. Muñoz, what NYPD internal investigation report do

24    you wish to offer into evidence?

25              MR. MUNOZ:  I think that's the one where they came in

H3fSmunC

1    it's supposed to be the bureau report investigation paper.

2    There is only three signatures on it.  When I was incarcerated,

3    they came up with papers.  They never had no type of audio,

4    none of that.  So they took some of my story and they took some

5    of their story.  They fabricated the internal affairs bureau

6    report.  That is how I saw it.

7            THE COURT:  OK.

8            MR. MUNOZ:  The attorney that was representing me, I

9    believe his name was Mr. Gregory Mouton, Jr., that made him

10   withdrew on my case automatically.  He said I was contradicting

11   myself through that fabricated report.  They never came into

12   the precinct with no audio or nothing like that.  They just

13   came with pen and paper.

14           THE COURT:  As I understand it, Mr. Muñoz, you don't

15   really want that report to come in at this trial because you

16   think it contains falsehoods; is that right?

17           MR. MUNOZ:  I'm really not sure.  Like, I'm kind of

18   lost right here right now.

19           And also about the situation when you're saying

20   "objection," what do you mean when you say "objection?"  Is it

21   permissible or not permissible?  Is it allowed?  When you were

22   saying Mr. Lichterman was trying to object to pictures from the

23   hospital, what does that mean?  Does that mean that they are

24   permissible?  Are they going to be allowed or not?  I have a

25   copy of all those pictures when I was hospitalized, and they

H3fSmunC

1   don't look all that great.

2            THE COURT:  I have a document, and I think you were

3   sent a copy of it, which is entitled defendants' pretrial

4   statement.

5            Do you have an extra copy, Mr. Lichterman --

6            MR. LICHTERMAN:  I do, your Honor.

7            THE COURT:  -- for the plaintiff?

8            Could you hand him that and turn to page three for him

9   so he knows what I'm talking about.

10           You'll see in the middle of page three, they have a

11   list of your exhibits.  Then next to that, where they object,

12   and then next to that, the reason or basis for objection.  Do

13   you see that?

14           MR. MUNOZ:  Yeah, I see it, ma'am.

15           THE COURT:  I just ruled that the photographs will be

16   admitted at trial.

17           MR. MUNOZ:  OK.

18           THE COURT:  After this conference, you're going to

19   talk with defense counsel and make sure that you agree as to

20   what the complete set of photographs should come in.

21           MR. MUNOZ:  OK.

22           THE COURT:  If there is any disagreement, of course

23   I'll hear from you and make a ruling.  Right now the

24   photographs taken of you after the incident are going to come

25   in at trial.

H3fSmunC

1          The second exhibit are the medical reports.  We

2     discussed that too.  Those are coming in at trial, and you and

3     defense counsel are going to discuss precisely which pages and

4     which passages should come in to make sure there is no

5     disagreement there as well.  OK?

6          MR. MUNOZ:  OK.

7          THE COURT:  We're up to item three, the NYPD internal

8     investigation report.  You're going to have the four defendants

9     here to be able to ask them questions before the jury at trial.

10    Of course, defense counsel can ask you questions in front of

11    the jury when you're on the witness stand during the trial.  Do

12    you understand that?

13         MR. MUNOZ:  Yes, ma'am.

14         THE COURT:  That's the kind of evidence that is

15    appropriate for the jury to hear and consider.  Somebody's

16    report created after the fact is not generally admissible to

17    show what happened in the event.  Only those people who were

18    involved in the event can really testify about it.  Do you

19    understand that?

20         MR. MUNOZ:  I understand.

21         THE COURT:  Generally speaking, that kind of report,

22    the NYPD internal investigation report, is not appropriate as a

23    trial exhibit.  Do you understand that?

24         MR. MUNOZ:  I understand, ma'am.

25         THE COURT:  Good.  If you have a document that shows,

H3fSmunC

1   just hypothetically -- I haven't seen this report, I am just

2   giving you an example -- let's say that report included a

3   statement from Officer Reid and you thought that statement

4   contradicted his trial testimony, you could look at that

5   report, read it to yourself, and ask Officer Reid at trial,

6   Officer Reid, didn't you tell an investigator a month after

7   this accident something very different?  Didn't you tell them

8   XYZ?

9           Do you understand what I'm saying?

10          MR. MUNOZ:  Yes, I understand, ma'am.

11          THE COURT:  But the report itself does not come into

12  evidence.  OK?

13          MR. MUNOZ:  OK.

14          THE COURT:  The next three exhibits that you've

15  discussed, the videotape and two sets of photographs, as I

16  understand it both from you and from defense counsel, they do

17  not exist.  They were never located, so those cannot be offered

18  as evidence.  OK?

19          MR. MUNOZ:  I mean, why they can't be presented, when

20  that store has cameras and the civilian cameras?  I believe

21  they lead to the precinct.

22          THE COURT:  Well, during discovery there was an

23  opportunity to try to obtain evidence, and no photographs or

24  videotape from the scene of the accident was ever located.  So

25  they are not available to offer as evidence at this trial.  OK?

H3fSmunC

1          MR. MUNOZ:  I believe that evidence was destroyed or

2     taken by these officers.  That's just my belief.

3          THE COURT:  I appreciate that's your belief.

4          Mr. Lichterman, do you want to respond to that with

5     respect to any search made for the videotape or the photographs

6     at the store?

7          MR. LICHTERMAN:  Yes, your Honor.  A search was

8     conducted.  Numerous efforts were made to try and locate and

9     identify any video footage related to the incident.  Our

10    understanding is there weren't any actual recording devices in

11    the store at the time of the incident.  I think there may have

12    been a camera with a live feed, but no recording devices.

13         THE COURT:  So it didn't store images?

14         MR. LICHTERMAN:  Correct.

15         THE COURT:  Then we go to the last plaintiff's

16    exhibit, which is transcripts of testimony of Defendants Reid,

17    Jones, and Flynn at pretrial proceedings.

18         Mr. Lichterman, what does this refer to?

19         MR. LICHTERMAN:  I believe it refers to one of the

20    pretrial proceedings in which --

21         THE COURT:  What pretrial proceeding?  Were they

22    deposed in this case?

23         MR. LICHTERMAN:  No, in the underlying criminal case.

24    They were not deposed in this case.  Pretrial proceedings in

25    the underlying criminal case.  Officer Reid and Officer Flynn

H3fSmunC

```
 1    had testified during those proceedings, and I believe that is

 2    the reference to this.  I don't believe that Officer Jones

 3    testified in any of the criminal proceedings.

 4              THE COURT:  What kind of hearing was it that required

 5    their testimony?  What was the issue?

 6              MR. LICHTERMAN:  I don't recall offhand exactly what

 7    the issue was.  I believe it was some type of -- it was related

 8    to admitting some evidence.  I don't recall the specifics

 9    exactly.

10              THE COURT:  Do you have copies of that?

11              MR. LICHTERMAN:  I do.

12              THE COURT:  I want you to review them.  I want you to

13    get copies of that testimony to the plaintiff for the trial.

14              MR. LICHTERMAN:  Yes, your Honor.

15              THE COURT:  I want you to be in a position to explain

16    to me what the subject of the Reid and Flynn pretrial,

17    pre-criminal trial testimony involved.

18              MR. LICHTERMAN:  Yes, your Honor.

19              THE COURT:  Mr. Muñoz, we will get you copies of this

20    testimony.  Do you have it with you already, Mr. Muñoz?

21              MR. MUNOZ:  I'm not sure.  Once again, like I said,

22    they snatched me, really they surprised me at Fishkill

23    Correctional Facility.  The date was supposed to be March 20.

24    I got two letters, two pieces of mail here, and it's from

25    Mr. Lichterman and Ms. Depoian and Zach Carter, right.  They
```

were saying that they were supposed to reschedule.  It was

supposed to be, from my knowledge, there was going to be a

legal phone conference.  I didn't know it was going to be a

physical one.

So they surprisingly took me out of work Monday and

brought me here.  I've been here ever since Monday.  So I had

two correction, two New York State correction officers with me,

and I left all my belongings.  Everything was just a surprise

for me.  I had to grab what I can grab, so I had a couple of

law work with one bag, but the rest was scattered around

because I am trying to study this case.  I am not sure.  I

don't know what I have by memory.

THE COURT:  I'll make sure defense counsel gives you

additional copies.  You can offer at trial prior sworn

testimony or prior statements of a defendant, but it has to be

relevant to the issues on trial, just like they can offer at

trial prior statements of yours that are relevant to the issues

at trial.  Keep that in mind.

Indeed, the defendants, as one of their exhibits, want

to offer the deposition that they took of you in this case.  To

the extent there are passages in prior testimony and a court

hearing or in a deposition by one of the parties, then those

can be offered at trial by the adversary, to the extent they're

relevant.  You can also refer to that testimony in examining a

witness.  If they say something inconsistent or if you want

H3fSmunC

1    them to admit that they said some fact in the past, you can

2    refer to that as well.

3           Let's turn to the issue of precisely what medical

4    records might be relevant here.  As I understand it, the most

5    relevant medical records are the records from Jacobi Hospital.

6    There are also references in the parties' submissions to

7    records from the New York City correctional facility and

8    Medicaid records.

9           Mr. Lichterman, do the correctional health records or

10   the Medicaid records refer in any way to the two lacerations or

11   broken ribs?

12          MR. LICHTERMAN:  No, they do not, your Honor.

13          THE COURT:  Mr. Muñoz, do you think that the

14   correctional health records or the Medicaid records refer to

15   the two lacerations or the broken ribs?

16          MR. MUNOZ:  Jacobi Hospital has medical records of all

17   my injuries when I was --

18          THE COURT:  We are going to admit the Jacobi Hospital

19   records.

20          MR. MUNOZ:  When I was in Rikers Island, because I had

21   did a crime, so I am incarcerated.  I am a prisoner.  I was in

22   Rikers Island.  I was an inmate there.  They attended me.  They

23   gave me medication.  They told me my two ribs were fractured.

24   They had to heal on their own, really.  The fracture is what

25   healed on its own.  I already had the stitches on my left eye

H3fSmunC

1    and my right arm, which they removed from my left eye and

2    removed from my right arm.  There has got to be medical records

3    at Rikers Island that they obtained my stitches.  I can't take

4    my own stitches out myself, so there has to be medical records

5    that I have those injuries.

6           THE COURT:  Mr. Lichterman, I would ask you to review

7    the records from the the correctional facility for plaintiff's

8    medical care in the weeks following the date of the injury here

9    and try to identify any passages that may be relevant and share

10   those with the plaintiff.  Will you do that?

11          MR. LICHTERMAN:  Yes, your Honor.

12          THE COURT:  Let's turn to the defendants' exhibit

13   list.  They also want to offer the relevant photographs of the

14   plaintiff and the plaintiff's deposition.  We have already

15   talked about those issues.  They want to offer the transcripts

16   of the plaintiff's testimony before the internal affairs issue.

17   I assume that is about this incident, is that right?

18          MR. LICHTERMAN:  That is right, your Honor.

19          THE COURT:  That would be admissible.  Then you list

20   the audio recording of the plaintiff's testimony.  Is that the

21   same testimony as reflected in the transcript?

22          MR. LICHTERMAN:  Yes, it is, your Honor.

23          THE COURT:  Is the audio recording difficult to

24   understand when listening to it?

25          MR. LICHTERMAN:  You can hear the voices.  There is

H3fSmunC

some background noise and such, but you can make it out.  The

transcript was made from the audio, so to the extent anything

is not clear, the transcript would make it clear.

THE COURT:  I want you to share with the plaintiff

this week those portions.  I want you to give him a copy of the

complete transcript and mark those portions you want to offer

at trial as an exhibit.

MR. LICHTERMAN:  Yes, your Honor.

THE COURT:  Mr. Muñoz, you're going to get the

transcript of all of your testimony both from the deposition

and from the internal affairs bureau testimony, and the defense

counsel are going to mark which passages they want to read to

the jury or provide to the jury.

If you think there are other related passages that

should be offered as well, you'll have a chance to point those

out to defense counsel because there's a doctrine about

completeness.  If you give the jury some evidence on a topic,

you have to give them all the evidence on that topic.  You

can't just give one sentence when there are two sentences about

that topic.  Do you understand what I'm saying?

MR. MUNOZ:  I understand, ma'am.

Now, back to the audio, which audio is he referring

to?  Is he referring to the audio of the internal affairs

bureau report?  Is he referring to that audio that he has to

provide?

1          THE COURT:  He is referring to the audio of the

2     internal affairs bureau inquiry, but they have a transcript of

3     what they believe the audio reads or says.  I don't know what

4     recording equipment you have available to you in the prison.  I

5     know you can get a copy of the transcript.

6          MR. MUNOZ:  The reason why I'm bringing that up is

7     because if it's in the first bureau report, if they are

8     supposed to come interview a prisoner or the word inmate, as

9     I am, and they are supposed to let me see the video, if it's a

10    hidden video, hidden audio, because at the time when they came,

11    I did not see them record me or I didn't see a tape recorder on

12    the desk or nothing like that.

13          What I'm trying to get at is, they came with pen and

14    paper, so how can there be an audio?  If there was an audiotape

15    recording of my voice, it must have been hidden, and I don't

16    think that is kind of -- how do you say -- what's another word

17    for legit?

18          THE COURT:  Fair?

19          MR. MUNOZ:  Yeah.  I don't think that's fair.

20          If you're supposed to interview me, you are supposed

21    to be truthful to me and tell me I am going to record you.  And

22    it's like right now, in the prison where I'm at, if I catch a

23    disciplinary, the lieutenant puts out a recorder and he records

24    me.  It is a visible one.  If there is an audio and I am saying

25    I did not see one, then it must have been on hidden audio

H3fSmunC

1    because they –– I saw them with pen and paper.  I did not see

2    no audio.  It wasn't a visible one.  If there was one, I don't

3    think that was fair.

4            THE COURT:  Well, can you tell me, Mr. Lichterman,

5    does the transcript or the audio recording itself reflect

6    notice to the plaintiff that is a recording is being made?

7            MR. LICHTERMAN:  I don't recall specifically whether

8    they mentioned that was being recorded.  They did identify,

9    that I do recall, that plaintiff was giving a statement to the

10   internal affairs bureau related to the incident.  We did

11   produce a copy of it to plaintiff during the discovery.

12           THE COURT:  It occurs to me, Mr. Lichterman, that some

13   of these issues are really admissibility issues in terms of

14   authentication.  Documents can be used to cross-examine a party

15   without being received in evidence, obviously.  Perhaps that is

16   what we should do with respect to the plaintiff's deposition

17   and the transcript of the internal affairs bureau, unless you

18   have a witness who could authenticate them or get an agreement

19   from the plaintiff they're coming into evidence.  Do you

20   understand that I'm saying?

21           MR. LICHTERMAN:  Yes, your Honor.  Our intention, I

22   believe, is to use them primarily for impeachment purposes.

23           THE COURT:  Fine.  Your next exhibit is the grand jury

24   indictment.  I don't believe that is admissible at trial.  Then

25   you have the Jacobi Hospital records.  We have already

H3fSmunC

1    discussed those.  Everyone agrees those should come in.  Then

2    you list psychological and drug treatment records.  I don't

3    know what those are specifically.

4              MR. LICHTERMAN:  Yes, your Honor.  Plaintiff has

5    various mental illnesses that he testified about related to

6    this case.  We believe that those, both about diagnosis of his

7    mental illnesses as well as treatment and medications and such,

8    including for drug treatment, directly goes to the heart of the

9    issues in this case.

10             THE COURT:  But I need to know, and the plaintiff

11   needs to know more than I do, precisely what records you're

12   referring to.  What period of time?  What providers?  Whose

13   records?  Do you have copies of those that you plan to offer?

14             MR. LICHTERMAN:  I do, your Honor.

15             THE COURT:  From what period of time?  What is the

16   date spread?

17             MR. LICHTERMAN:  I believe it was a few years prior to

18   the incident up to a few years after the incident.  There were

19   a few different providers.  During the course of discovery,

20   Judge Freeman had limited access to what defendants could

21   access.

22             THE COURT:  I read that, but you don't get to offer

23   into evidence at trial everything you get discovery on.  You

24   need to isolate precisely what records you want to offer at

25   trial and share those with the plaintiff.

H3fSmunC

1          Do you have precisely what records you want and what

2     providers?

3          MR. LICHTERMAN:  We've identified the group of

4     documents.  Primarily we want to use these documents for

5     impeachment purposes, again, to the extent plaintiff, depending

6     on his testimony in the case.

7          THE COURT:  I don't need to rule on admissibility of

8     impeachment materials.  So it's more impeachment purposes.

9     It's fine.  We can move on.

10          The next thing that is listed as a defendants'

11     exhibit, that is an arrest report.  That is not admissible.

12     That is in evidence as a document at trial.  The next record is

13     an NYPD complaint report.  That is not admissible.  The next

14     record is a certificate of disposition.  Is that for the armed

15     robbery here?

16          MR. LICHTERMAN:  Yes, your Honor.

17          THE COURT:  That would be admissible.

18          MR. MUNOZ:  Your Honor, can I interject, with all due

19     respect?

20          THE COURT:  Yes.

21          MR. MUNOZ:  The documents that he is trying to provide

22     on the psychiatric issues are programs that I was, when I was

23     out in society, that I was in those programs because I was on

24     parole.  I was in sort of like a mental illness program where

25     you gave your freedom and you have to abide by the rules, and

H3fSmunC

1    one of their rules were for me to go to an outpatient -- it's

2    an outpatient mental illness program.  Most of the programs

3    that I was there, at the times I was taking medications, they

4    were all past way before the incident of the date that I did

5    the crime.  However, I was still on psychiatric medication that

6    was not taken.  There were -- actually, this was kind of

7    lowered.  I knew exactly who I was, how I got on the train,

8    etc., etc.  The medications that I was taking didn't make me

9    malfunction.  I was functioning very well.

10          Now, the other issue about the drugs, that's what the

11   program was about.  That is why I was going to the program, so

12   I could get cleaned up, because at that time, I was active in

13   using drugs.

14          THE COURT:  Thank you.  The defendants will be able to

15   inquire about your mental condition, including any psychiatric

16   medications you were on or supposed to be taken at or around

17   the time of the incident of September 2011, as well as any

18   illegal drug use at or around that time, because obviously your

19   mental state could have affected your ability to, first, even

20   remember what happened at the date, if you were not able to

21   think clearly or under the influence of drugs inappropriately.

22          Similarly, with respect to the time of the trial this

23   week, are you taking medication now?

24          MR. MUNOZ:  I am no longer taking psychiatric

25   medications, ma'am.  I am just on diabetic medication and I

H3fSmunC

1     also take asthma medications.  Other than that, no.

2               THE COURT:  I need to understand, Mr. Lichterman, with

3     precision what you want to establish at trial with respect to

4     the plaintiff's mental state on or around September 2011.

5               MR. LICHTERMAN:  Yes, your Honor.

6               THE COURT:  I need dates, I need medications, I need

7     diagnoses.  Do you have those for me now?

8               MR. LICHTERMAN:  We have his diagnoses and

9     medications.  I don't have the specific page references.

10              THE COURT:  Do you have the dates?

11              MR. LICHTERMAN:  At the time, it's our understanding

12    that at the time of this incident, he had current diagnoses for

13    paranoid schizophrenia, anxiety, depression, and substance and

14    drug abuse.

15              THE COURT:  I think what I need is precision here.  I

16    need to understand and the plaintiff needs to understand what

17    you're basing that on is diagnosis by whom, when, what

18    medications, how this relates to September of 2011.  Do you

19    understand what I'm saying?

20              MR. LICHTERMAN:  Yes, your Honor.

21              THE COURT:  Can you get me a letter tomorrow,

22    Thursday, with that precise description?

23              MR. LICHTERMAN:  Yes, your Honor.

24              THE COURT:  Thank you.

25              The next thing you want to offer is the plea

H3fSmunC

1    allocution.  I take it that's the plea to the armed robbery

2    that is the subject of the certificate of disposition, is that

3    right?

4              MR. LICHTERMAN:  Yes, your Honor.

5              THE COURT:  The plea allocution does not come in.  If

6    you believe that there is something precisely in the plea

7    allocution to add beyond the certificate of disposition, you're

8    going to have to justify that to me.

9              The gun, I think that would be admissible.  It's part

10   of the story of what happened at the time of arrest and just

11   preceding the alleged use of excessive force.

12             The Sprint report, I take it that's the 911 call that

13   required the officers to respond to the scene; is that right?

14             MR. LICHTERMAN:  Yes, your Honor.

15             THE COURT:  Do you have a transcript of it?

16             MR. LICHTERMAN:  Yes, your Honor.

17             THE COURT:  Do you have one to hand up for me and do

18   you have one for the plaintiff?

19             MR. LICHTERMAN:  We do.

20             THE COURT:  You can hand that to my clerk and hand

21   that to the plaintiff.

22             MR. LICHTERMAN:  I only have one copy on me.

23             THE COURT:  Give it to the plaintiff then.  I'll need

24   a copy too in order to rule on these things.

25             MR. MUNOZ:  Your Honor, can I interject?

H3fSmunC

1          THE COURT:  Yes.

2          MR. MUNOZ:  Mr. Lichterman sent me a copy of a Sprint

3     form.  I guess it was the individual who I robbed, and it had

4     nothing on it.  It just said Sprint 911, that was it.  It had

5     no type of writing on it or nothing like that.

6          THE COURT:  Well, he is going to give you another copy

7     right now.

8          Mr. Lichterman, you're going to provide me a copy

9     tomorrow?

10          MR. LICHTERMAN:  Yes, your Honor.

11          THE COURT:  The plaintiff's complaint, I don't think

12     that is coming into evidence, or the amended complaint or the

13     plaintiff's memorandum of law.  These last three exhibits might

14     theoretically be used for impeachment purposes, but they are

15     not going to being admitted by themselves as defense exhibits.

16     All right?

17          MR. LICHTERMAN:  Yes, your Honor.

18          THE COURT:  Let me read for you what I am going to

19     instruct the jury at the time we're choosing the jury.  I would

20     like everyone to listen carefully to see if what I'm about to

21     tell the jury on Monday morning seems accurate and appropriate

22     to you.  It is a little bit long, so I am going to read it

23     slowly once.  Don't try to take it all down.  Then I'll read it

24     again and pause.  I am going to read this twice.

25          The plaintiff in this case, that is the person

H3fSmunC

1    bringing the claims, is Nehmias Muñoz.  Mr. Muñoz, do you

2    pronounce your name Nehmias?

3           MR. MUNOZ:  It is Nehemiah in English and it is

4    Nehmias in español.

5           THE COURT:  Nehmias?

6           MR. MUNOZ:  Nehmias it is in Spanish and the English,

7    biblical name is Nehemiah in English, and Nehmias in español.

8           THE COURT:  Nehmias Muñoz.  His claims arise out of

9    events that occurred on September 13, 2011, in the Park Chester

10   area of the Bronx.  On that day he committed an armed robbery

11   and was arrested.  At the time of the arrest, the plaintiff had

12   a gun.  He later pleaded guilty to robbery.  These events are

13   not in dispute at this trial.  This trial concerns something

14   else.  Mr. Muñoz asserts that after the arresting officers had

15   subdued him and placed handcuffs on him, he was beaten and

16   injured.  He contends that the injuries he sustained from that

17   beating caused lacerations and broken ribs.  He has sued the

18   four police officers who were present at the time of his arrest

19   to recover damages from them for those injuries.

20           So far does that seem right, Mr. Muñoz?

21           MR. MUNOZ:  Yeah, that seems to be right.

22           THE COURT:  I am going to continue then.

23           There will also be evidence introduced at trial that

24   Mr. Muñoz had received treatment for a drug addiction and

25   mental health problems.

H3fSmunC

 1          This I am going to revise once I get a statement from

 2     the defendants that I more clearly understand what may be more

 3     admissible.  I am continuing now.

 4          Every person, whether they committed a crime or not

 5     and whether they have health problems or not, is protected by

 6     our Constitution.  The police may not use excessive force

 7     against anyone in making arrests.  While it may be necessary to

 8     use force in making an arrest, any force used at the time of an

 9     arrest must be reasonable in light of the facts and

10     circumstances that existed at the time of the arrest.  The jury

11     chosen in this trial must decide whether the police used

12     excessive force against Mr. Muñoz, and if they did, whether any

13     injuries that Mr. Muñoz may have sustained at the time of his

14     arrest were caused by the use of that excessive force.

15          Mr. Muñoz is proceeding pro se, that is, representing

16     himself.  He is currently incarcerated as a result of his

17     robbery conviction.  I instruct you that the protections

18     provided by our Constitution apply to sentenced prisoners just

19     as much as they apply to those who never committed a crime and

20     who are not incarcerated.  Every person in this country is

21     entitled to be free from the excessive use of force by the

22     police.  In addition, every person who believes that he has a

23     claim that can be redressed in court is entitled to bring a

24     lawsuit and represent himself in that lawsuit.  You are not to

25     treat Mr. Muñoz any differently than you would any other

H3fSmunC

1  litigant simply because he is representing himself.  His claims

2  arise from a time when he committed a crime.  He is currently

3  incarcerated.  All litigants in this court are equal and all

4  are entitled to the full protection of our law.

5          This case concerns events that occurred on

6  September 13, 2011.  It is not about other incidents on other

7  dates concerning other individuals in which the police have

8  been accused of using excessive force.  If chosen as a juror,

9  you must base your verdict solely on the evidence received at

10 this trial regarding the plaintiff's claim that the defendants

11 used excessive force against him on September 13th, 2011, and

12 in doing so, injured him on that day.

13         Now, I said I would read this a second time, but we'll

14 put that off until Monday because it's already getting late and

15 we have a lot more to cover.  I am going to give you a second

16 chance to request changes.

17         So far, Mr. Muñoz, did what I read sound OK to you?

18         MR. MUNOZ:  Yes, ma'am.  But I also want to address

19 also, due to the fact for my injuries, now my left eye, my

20 vision is not all that great.  I lost a lot of vision to my

21 left eye.  Basically, I need reading glasses.  I was all right

22 a couple years when I started losing my vision.  And my left

23 knee is not all that great either.  That's due to the injuries,

24 because when I got through the excessive force, they never

25 checked my legs.  They only checked from my waist up.  I just

H3fSmunC

1   wanted to put that, that is also in New York State DOCS

2   medical, on my medical.  Other than that, everything, it's OK.

3   So far, so good.

4          THE COURT:  Mr. Lichterman.

5          MR. LICHTERMAN:  Yes, your Honor.  It's my

6   understanding that the only injuries related to this incident

7   that plaintiff is claiming or claimed throughout this case are

8   the ones that you identified previously.  We are not aware from

9   any of the documents in our possession of any of these

10  additional injuries.  Plaintiff hasn't identified any of those

11  and we don't believe those should be part of this case.

12         MR. MUNOZ:  Your Honor, can I interject?

13         THE COURT:  I'll read you again the complaint.  Excuse

14  me one second.

15         MR. MUNOZ:  Your Honor, can I interject?

16         THE COURT:  Hold on just one second.  I want to look.

17         In the plaintiff's pretrial statement, he lists as his

18  injuries two fractured ribs, partial loss of vision in his left

19  eye, bleeding cuts on my left eyebrow that required stitches,

20  one cut on my right forearm that required six stitches, and

21  other smaller cuts and bruises.  It took approximately two

22  months for my fractured ribs to heal.  I was in severe pain for

23  many months and continue to this date to experience severe

24  headaches that I did not experience before the incident.

25         This is the statement, Mr. Muñoz, that you gave in

H3fSmunC

1    February in preparation for this trial.  There is no reference

2    in that statement to your knee, so your knee is not going to be

3    part of this trial.  Let me explain why, Mr. Muñoz.

4            MR. MUNOZ:  OK.

5            THE COURT:  As you know, you filed this lawsuit in

6    2014.

7            MR. MUNOZ:  Yes, ma'am.

8            THE COURT:  You filed a complaint.

9            MR. MUNOZ:  Yes, ma'am.

10            THE COURT:  Everybody takes discovery after that.  If

11    I can find a copy of the complaint and look at the injuries

12    claimed in the compliant.  You identified what your injuries

13    are and people get a chance to take discovery with respect to

14    those.

15            MR. MUNOZ:  OK.

16            THE COURT:  You can't change that list, except for

17    very good cause and with permission of the court, because on

18    the eve of trial, it is too late to open discovery and examine

19    a new set of injuries that are claimed.

20            MR. MUNOZ:  Your Honor.

21            THE COURT:  In your complaint, this is what you said

22    at page 31:  Two fractured ribs, a cut near your left eye that

23    required stitches, and a cut on your right arm that required

24    stitches.  There was no reference to a loss of vision, the need

25    for reading glasses, or anything about the left knee.

H3fSmunC

1          Mr. Muñoz.

2          MR. MUNOZ:  When Mr. Lichterman came to visit me in

3   Clinton Correctional Facility, I had no attorney available.  It

4   was just him and a stenographer.  I did mention to him about

5   the vision, the loss of vision of my eye, and I did mention to

6   him my left knee.  I did mention that to him.

7          THE COURT:  That's in your deposition?

8          MR. MUNOZ:  Yeah.  He probably didn't write that down

9   because I surely did mention that too him.

10          THE COURT:  Mr. Lichterman, was the deposition taken

11   of the plaintiff?

12          MR. LICHTERMAN:  Yes, a deposition was taken of the

13   plaintiff.

14          THE COURT:  And in that deposition, did he describe

15   his injuries?

16          MR. LICHTERMAN:  He did.  I don't recall offhand

17   whether he mentioned anything about a loss of vision or his

18   knee.

19          THE COURT:  Would you review that and write tomorrow

20   to advise me regarding that?

21          MR. LICHTERMAN:  Yes, your Honor.

22          THE COURT:  And advise the plaintiff as well.

23          The defendants' motions in limine five, it's unclear

24   to me what some of these refer to.  Let's take them one by one.

25   The first has to do with the fact that the plaintiff is suing

H3fSmunC

1    just the four individual defendants and not the City of New

2    York, and that the jury, it's irrelevant to the jury whether or

3    not the City of New York may some day down the road indemnify

4    an individual defendant for any damages that are awarded

5    against a defendant in favor of the plaintiff.

6             I want to just make sure you understand, Mr. Muñoz,

7    that the sole defendants here are the four individual

8    defendants.  Do you understand that?

9             MR. MUNOZ:  Can you kind of, like, make that a little

10   clearer?  What you're trying to tell me is that --

11            THE COURT:  Sure.  You're asking the jury to find that

12   one or all of these four defendants violated your rights by

13   using excessive force against you, and if you find that, you're

14   asking them to award money to you.  Do you understand that?

15            MR. MUNOZ:  Yes, I understand.

16            THE COURT:  You can't argue that it's the City of

17   New York who is going to pay you money.  It is these four

18   individual defendants.  Do you understand that?

19            MR. MUNOZ:  But I thought that New York NYPD belongs

20   to New York City?

21            THE COURT:  The NYPD is part of New York City.  It is

22   our police force.  But you have not sued the City.  To the

23   extent that you tried to sue the City, that claim has been

24   dismissed.  The only claims at trial here are against these

25   four individual officers.  OK?

H3fSmunC

1          MR. MUNOZ:  Why was the claim to sue the City

2     dismissed?

3          THE COURT:  Judge Torres wrote about that.  These are

4     complicated legal issues, but the bottom line is that an

5     individual officer who uses excessive force against a person is

6     personally liable for doing that.  The City is not

7     responsibility unless the City was responsible because there

8     was a pattern or practice of using excessive force in the way

9     that was used against you.  Judge Torres looked at that claim

10    and dismissed the claim against the City of New York.  OK?

11         MR. MUNOZ:  So she favored the NYPD, in other words?

12         THE COURT:  No.  She left the four defendants in here.

13    You are going to trial against the four defendant officers.

14    OK?

15         MR. MUNOZ:  OK, ma'am.  Thank you for clearing that

16    for me.

17         THE COURT:  She just applied the law.

18         The next thing, the next motion is about disciplinary

19    histories and prior misconduct.  What are we talking about

20    here, Mr. Lichterman?  I have no idea what you're referring to.

21         MR. LICHTERMAN:  Yes, your Honor.

22         During the course of discovery, CCRB records were

23    produced to plaintiff.  Those records, and to the extent

24    plaintiff wants to discuss anything in those records or

25    anything related to the office, any allegations against the

H3fSmunC

officer related to prior misconduct, that is specifically what
we are referring to that we would like for him to be precluded
from discussing.

          THE COURT:  I want you to discuss this with Mr. Muñoz
at the end of today's conference and see if this is an issue.

          MR. LICHTERMAN:  Yes, your Honor.

          THE COURT:  The next issue is, I think, irrelevant.
It is that the plaintiff should be precluded from arguing that
any force used against him in order to recover the gun and
handcuff him was excessive.  His claim is that the excessive
force was used after he was handcuffed.

          The next argument is that you should be able to
cross-examine him about his mental illness and treatment.
Again, theoretically, yes, but you need to define with
specificity what you want to ask him about and I have to be
able to rule that it is relevant to an issue of credibility or
otherwise for the jury.  You're going to provide a letter to me
tomorrow.

          MR. MUNOZ:  Your Honor.

          THE COURT:  Yes, Mr. Muñoz.

          MR. MUNOZ:  Mr. Lichterman is trying to get at the
point where he is trying to say that the mental illness and
because of my drug addiction, he is trying to pinpoint, in
other words, making me seem like drugs don't last in the
system.  In other words, I was high on crack, I admitted it,

H3fSmunC

1    but crack don't last that long in the system.

2            So by the time when I was in the store, I knew exactly

3    that I had robbed somebody and I knew exactly that I was

4    turning myself in by replacing the firearm in my left pocket

5    with the nose pointing down and the finger off the trigger, and

6    at no point of view I had that firearm pointing towards

7    endangering the life of an officer.

8            So what Mr. Lichterman is trying to get to a point

9    where he is trying to say that because of my drug addiction and

10   my mental illness, because it is a part of me, he is trying to

11   make it seem like, in other words, that I didn't know what I

12   was doing at that time when the officers was there and I didn't

13   know what I was saying.  That is what he is trying to get at,

14   because he tried, when he went to Clinton for the hearing --

15           THE COURT:  I am going to interrupt you, Mr. Muñoz,

16   because we have so many talks yet to cover.  There are more

17   things I want to make sure you understand.  But you're

18   absolutely right, and thank you for pointing that out.  That is

19   what he is going to try to establish at trial, and you're going

20   to have an opportunity to explain to the jury at trial why

21   that's inaccurate and that you fully understood what was

22   happening at the time and can remember it.  The jury is going

23   to have these two versions and two sets of arguments and they

24   are going to have to make a decision.  OK?

25           MR. MUNOZ:  Yes, ma'am.

H3fSmunC

1              THE COURT:  We are going to get a letter tomorrow,

2      which will be delivered to you, which will be more precise

3      about what evidence and arguments with respect to drug use and

4      mental illness the defendants are going to try to rely on at

5      trial.  I am going to rule yes or no with respect to each of

6      the identifies issued.

7              Then there is the last motion in limine to cross the

8      plaintiff about his prior convictions.  Obviously the

9      conviction for the robbery is admissible.  It can come in with

10     respect to the offense of conviction, the date conviction was

11     imposed, and the sentence imposed as a result of the

12     conviction.

13             To the extent that the defendants want to say that

14     this plea was in full satisfaction of numerous arrest charges,

15     as well as two subsequent arrests, that is not admissible.

16     There are two convictions, as I understand it, the 2013

17     conviction for robbery and the 2006 conviction for criminal

18     sale of an illegal substance.

19             What was the sentence for the 2006 conviction?

20             MR. LICHTERMAN:  That was 30 months, your Honor.

21             THE COURT:  That brings us within the ten-year period?

22             MR. LICHTERMAN:  Yes, your Honor.

23             THE COURT:  You can inquire of the plaintiff with

24     respect to that conviction as well, but again, the offense of

25     conviction, the sentence imposed, and nothing more.

H3fSmunC

1          MR. MUNOZ:  Your Honor, can I interject with the 2013

2     crime that I committed --

3          THE COURT:  Yes.

4          MR. MUNOZ:  -- was an undercover who gave me money to

5     purchase narcotics and I took his money.  That has nothing to

6     do with no robbery, compared to the armed robbery that I did.

7     It was a dropoff.  It was supposed to be a buy-and-bust, for me

8     to take the money and buy drugs and then charge as sales.  That

9     was in 2013.  I believe it got acquitted with the 2011 crime,

10    when I took the ten years.  That has nothing to do with no

11    robbery.  The only robbery I have on my record, really, this is

12    the armed robbery that I committed in 2011, and I regret it.

13         THE COURT:  Mr. Lichterman, in your letter of

14    tomorrow, list precisely which convictions you wish to offer at

15    trial as impeachment or question the plaintiff about at trial

16    so we have precision here.  OK?  Again, the offense of

17    conviction, the date of conviction, the sentence imposed.

18         MR. LICHTERMAN:  Yes, your Honor.

19         THE COURT:  Thank you.

20         So now I am going to speak to you, Mr. Muñoz, a little

21    bit about how the trial is going to operate.  It is going to

22    start Monday.  We will meet Monday at 9:30.  We will have about

23    a half hour to discuss any open issues with each other.

24         We are going to choose a jury.  We are going to choose

25    eight jurors.  I am going to give them each a questionnaire and

H3fSmunC

1     ask questions of them, and then each of you will have an

2     opportunity to identify three people you don't want to sit on

3     the jury.

4               MR. MUNOZ:  That's pertaining to me or to the counsel?

5               THE COURT:  Both.  You get to name three people you

6     don't want on the jury, and the defendants get to name three

7     people they don't want on the jury.  We are going to put in the

8     jury box 14 people and six of them are going to be excused,

9     three that you choose to strike and three that the defendants

10    choose to strike.  We are going to be left with eight people.

11              After we choose a jury, everybody is going to have a

12    chance to make an opening statement.  You will, Mr. Muñoz, and

13    so won't defense counsel.

14              MR. MUNOZ:  Repeat that, please, your Honor.

15              THE COURT:  Sure.

16              After we pick a jury, you get a chance to talk to the

17    jury and make an opening statement.  This is your chance to

18    tell the jury what you think the evidence is going to show.

19    Then defense counsel gets to stand up and make an opening

20    statement and describe to the jury what the defense thinks the

21    evidence is going to show.

22              After those two statements, you, Mr. Muñoz, get to

23    call witnesses.  Do you know yet if you want to take the stand

24    first or if you want to call the officers first as witnesses?

25              MR. MUNOZ:  I believe I'll take it first.

H3fSmunC

1          THE COURT:  I am going to give you some suggestions

2     about that in just a few moments.  I just want to describe the

3     structure.

4          You're planning to call each of the officers as

5     witnesses or not on your case?

6          MR. MUNOZ:  Yeah.  I want all the officers to be

7     present.

8          THE COURT:  Good.  You're going to be call each of

9     them.  If you do, that will probably be the whole trial.  But

10    the defense, if you don't, will be able to call any officer you

11    don't call of these four.  Your choice entirely.

12          Then after all the evidence is in, you will get a

13    second chance to talk to the jury directly, that is called

14    summation or closing argument, and so will defense counsel have

15    a chance to talk to the jury directly.  That is called, again,

16    closing argument or summation.

17          Because you have the burden of proof here, Mr. Muñoz,

18    to prove that the officers used excessive force against you,

19    you will speak to the jury last.  Then I am going to give the

20    jury the charge as to the law, and then they will deliberate

21    and reach a verdict.  That is sort of the outline of the whole

22    trial, OK?

23          Now let me talk to you a little bit about some things

24    to keep in kind when you're representing yourself at trial.  I

25    think it's often helpful to think about this as wearing two

H3fSmunC

1    hats.  One hat you will be testifying to the jury under oath

2    from the witness stand, giving them your best recollection of

3    what happened, describing for the jury what injuries you

4    suffered, how you got them, and how they affect you.  That is

5    witness testimony.

6              I think it would be very helpful probably for you to

7    make an outline of all the topics you want to cover.  Not to

8    write out your testimony, but just to make sure that you cover

9    each important event that you want to tell the jury about.

10   Then you can take that piece of paper and look at it on

11   occasion when you're talking to them and make sure that you

12   have covered everything that is important for you to tell them.

13             MR. MUNOZ:  So, in other words, I can put them in

14   order, my arguments, and I'll be able to look at my paper and

15   make sure that I can cover all the arguments that I need to

16   proceed?

17             THE COURT:  Yes, though I wouldn't call it arguments.

18   This is the chance when you're under oath on the witness stand

19   to describe the facts, what you saw, what you felt, what you

20   heard, what you said that is relevant to the charges here.  You

21   could give the jury a little background about your life, if you

22   would like.  You can describe for them how that -- I am just

23   using an example here -- how it felt to have those two broken

24   ribs and how long it took for them to heal.  But that's the

25   time when you're speaking factually to them about something you

H3fSmunC

know because you certainly experienced it.  OK?  It's under

oath.

MR. MUNOZ:  When will I know when to say that?

Because, here I go again, I don't have a lot of legal knowledge

here.  I am pro se and this is my first time.  How would I know

when to say that?

THE COURT:  Well, I am going to help you that way in

this section.  I just asked you if you wanted to testify first

or call an officer to testify first, and you told me you would

like to testify first.  After opening statements are done, I

will ask you, Mr. Muñoz, do you want a witness to call on your

behalf?  You will say to me in open court in front of the jury,

Your Honor, I would like to testify first.  Then you'll walk up

here and take the witness stand.  I'll place you under oath,

swear you in.  You'll sit down, you'll face the jury, and

you'll give them your testimony.  Do you understand?

MR. MUNOZ:  Sort of like a story of what happened that

day?

THE COURT:  You've got it.

MR. MUNOZ:  Yes, ma'am.

THE COURT:  Good.  Again, I think it is very helpful,

because you won't have a lawyer placing questions to you, to

make, just on one piece of paper, an outline to make sure that

you cover everything that you want to tell the jury about what

happened that day or about your life generally.  But the focus,

H3fSmunC

1     of course, is on the events of that day and the injuries you

2     suffered.  That's one hat you're wearing.  You're wearing the

3     hat of the person that experienced those events that day.  You

4     give that testimony to the jury under oath.

5              But there is a second hat you're wearing at this

6     trial, and that is you're representing yourself like a lawyer

7     would represent you.  When you're doing that, you get a chance,

8     for instance, to speak to the jury in an opening or closing

9     statement or to ask the defendants questions when they take the

10    stand.

11             Now, this is a very important distinction, and I want

12    to make sure I am explaining it to you in a way that you can

13    understand, Mr. Muñoz.  The only time you can tell the jury

14    precisely what happened on that day is when you're under oath

15    and testifying from that witness stand.  Do you understand

16    that?

17             MR. MUNOZ:  Yes.  When I approach as the first

18    witness, right, ma'am?

19             THE COURT:  Yes.  When you're making an opening

20    statement to the jury or a closing statement to the jury or

21    examining one of the officers, that's not the time for you to

22    give testimony.  That's the time you're wearing your attorney

23    hat.  That's the time you're speaking.  And some people find it

24    helpful to do this, to speak like in the third person, to say,

25    Mr. Muñoz will tell you, Mr. Muñoz, you know, didn't you say to

H3fSmunC

1    Mr. Muñoz, didn't you hit Mr. Muñoz?

2              When you're on the witness stand and testifying under

3    oath, you can tell the jury, I was hit.  This is how I hurt.

4    This is what my broken ribs felt like.  OK?

5              Now, we'll take breaks as necessary during the trial

6    to make sure that you're not confused by this.  I'll try to

7    give you the appropriate guidance.  But essentially the only

8    time you can tell the jury precisely what happened is when

9    you're under oath on the witness stand.  OK?

10             MR. MUNOZ:  I understand that, ma'am.  Thank you.

11             THE COURT:  Now, this applies to both sides.  I don't

12   want either of you to object when a question is placed or an

13   answer is given in the middle of a sentence.  Let the whole

14   sentence, the whole question, be placed or the whole answer be

15   given, and then you can object.

16             How do you object?  You just say the word "objection."

17   You don't have to spell it out.  I'll be listening carefully.

18   I'll try to understand precisely what the objection might be

19   and I'll give you a ruling that allows the witness to answer or

20   not.  If I'm confused about what the basis of the objection

21   might be, I'll make sure we take a break and I get a chance to

22   ask you exactly what the basis of the objection is.

23             Mr. Muñoz, you're not going to be able to ask the jury

24   to give you a precise amount of money in your summation.

25   You're not going to be able to say this injury is worth this

H3fSmunC

1    amount of money.  OK?  But you can explain to them and refer to

2    your own testimony, you can remind them of what you testified

3    about and how you suffered, but you can't put a dollar figure

4    on it.  Do you understand what I'm saying?

5              MR. MUNOZ:  Yes, your Honor.  Yes, ma'am.

6              THE COURT:  Good.

7              Let me ask you, Mr. Lichterman, is there anything else

8    that we need to cover from your point of view?

9              MR. LICHTERMAN:  No, your Honor.

10             THE COURT:  Mr. Lichterman, tomorrow you're going to

11   help us, both the plaintiff and me, get better prepared for

12   this trial.  You're going to get him some documents that he

13   needs.  You're going to write a letter that identifies with

14   some precision precisely what these medical issues are and the

15   convictions are and the other things we talked about, so that

16   I can rule appropriately on what might be admissible.  OK?

17             MR. LICHTERMAN:  Yes, your Honor.

18             THE COURT:  Thank you.

19             Mr. Muñoz, did you have any questions for me today?

20             MR. MUNOZ:  Your Honor, it's been a pleasure.  I would

21   like to say, with all respect, thank you.

22             Also, one question for you.  Am I allowed to bring the

23   paperwork that I have with me during trial?

24             THE COURT:  Yes.  Now, I am going to have to

25   coordinate with my deputy and the prison facility.  Hold on one

H3fSmunC

1    second.

2              (Pause)

3              We are going to break in a moment.  If there are any

4    documents that you think you left back in your prison facility

5    and don't have with you here, make sure you mention that to

6    Mr. Lichterman so he can get you copies tomorrow.  It would be

7    important for you to be able to bring your documents with you

8    back and forth from your cell to court, including an outline of

9    anything you want to tell the jury.

10             Anything else, Mr. Muñoz?

11             MR. MUNOZ:  No, ma'am.  Thank you.

12             THE COURT:  I'll see everybody Monday morning at 9:30.

13             Thank you, all.

14             (Adjourned)

15

16

17

18

19

20

21

22

23

24

25